**Affirmed and Memorandum Opinion filed March 11, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00986-CV

## IN THE INTEREST OF A.V.T.R., A CHILD

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-68957**

## MEMORANDUM OPINION

Appellant Andrew Rose ("Father") appeals the trial court's order following a bench trial in a suit affecting the parent-child relationship. In three issues Rose challenges the trial court's exclusion of evidence during the hearing on his motion for new trial, the overruling of his motion for new trial, and the assessment of amicus attorney's fees. We affirm.

### BACKGROUND

Father and appellee Joann Taylor ("Mother") had a child in 2014. Pursuant to a mediated settlement agreement ("MSA") Mother was named sole managing

conservator of the child and Father was the possessory conservator. The parties agreed to child support and Father's visitation. Father subsequently filed a petition to modify the MSA in that Father sought to be appointed sole managing conservator with the right to designate the primary residence of the child. In the alternative Father requested that the parties be named joint managing conservators. Father alleged that the circumstances of the child had changed because Mother engaged in a history or pattern of child neglect. Father's petition to modify did not allege specific circumstances that had materially and substantially changed, but at trial Father alleged that Mother made false accusations of sexual abuse against him and, in that regard, Mother had engaged in a history or pattern of child neglect.

The parties proceeded to a bench trial where the following witnesses testified: (1) LaRon Haynes, an investigator with the Department of Family and Protective Services (the "Department"); (2) Ambryia Wilson, another Department investigator; (3) Melissa Ramsey, a family therapist who saw the child; (4) Father; and (5) Mother.

Haynes testified that he conducted an investigation into an outcry of sexual abuse made by the child, who was three years old at the time. The outcry was reported by Mother. The investigation resulted in an "unable to determine" finding. According to the investigation report, Mother reported that the child exhibited behaviors consistent with sexual abuse after visitation with Father. Haynes was unable to rule out the allegation because the child was unable to give details about the allegation. Haynes referred the child to play therapy. The therapist from play therapy also reported the child's outcry and the Department opened a second investigation.

The Department assigned Wilson to investigate the outcry reported by the therapist, the second outcry. Wilson testified that the investigation was closed

2

because the Department determined that the outcry involved the same allegations that had been made in the first allegation; there was nothing new to investigate, resulting in an administrative closure.

At the time of trial Father was working as an aviation instructor in China, which required him to alternate four weeks living in China with four weeks in Houston. Father asked the trial court to modify the MSA's standard possession order to allow him access to the child during the time he was living in Houston. Father also requested that Mother pay child support to him. Father testified that he exercised all periods of possession and was up to date on child support. Father denied the sexual abuse allegations. While the abuse allegations were investigated Father was not allowed visitation with the child.

Mother testified that she did not believe the circumstances of the child had changed and she was willing to give Father visitation every weekend he was in Houston.

At the conclusion of the testimony Mother's attorney requested a directed verdict, arguing that Father failed to meet his burden to show a material and substantial change in the child's circumstances. The trial court agreed and granted a directed verdict on Father's motion to modify.

The trial court rendered judgment denying Father's motion to modify conservatorship and granting Mother's motion to modify child support. The trial court further denied both parties' requests for attorneys' fees and granted the amicus attorney's request for fees, ordering Father to pay $12,235 in amicus fees.

Father filed a motion to reconsider amicus fees, motion for new trial, and amended motion for new trial in which he argued the trial court erred in assessing amicus fees against him and in excluding certain testimony. Specifically, Father

asserted he was entitled to a new trial because (1) the evidence was legally and factually insufficient to support the trial court's judgment allocating amicus fees; and (2) "an unauthorized act or acts by [Father]'s trial counsel so prejudiced [Father]'s ability to present his claims in this case that the effect was to deprive [Father] of his day in court[.]" The trial court held a hearing on Father's motion for new trial, which was denied.[1]

At the hearing on the motion for new trial Father introduced evidence that Mother had entered into an MSA with Don Brooks, the father of Mother's older child. A portion of the MSA enjoined Brooks from testifying in the modification proceeding between Mother and Father. Brooks was represented by attorneys with the same law firm that represented Father. Father asked that Brooks be permitted to testify at the hearing on the motion for new trial; Father did not seek Brooks's testimony at trial. The trial court excluded Brooks's testimony from the motion-for-new-trial hearing. Father asked to present an offer of proof of Brooks's testimony, which the trial court agreed to allow after the hearing. By the time the hearing ended Brooks had left the courtroom. Approximately one week later the attorneys reconvened, but Brooks was not present. Father's attorney stated on the record that Brooks would have testified that he was involved in a modification proceeding with Mother and was represented by the same law firm that represented Father. Brooks would have testified that Mother also made allegations of sexual abuse against him in the modification proceeding. Brooks would have testified that Mother reported the alleged abuse to the Department.

---

[1] The motion for new trial was denied by operation of law on November 27, 2019, 75 days after the judgment was signed. *See* Tex. R. Civ. P. 329b(c). The hearing was not held until December 9, 2019; however, the trial court retained plenary power for an additional 30 days after the motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(e). The trial court noted on its docket sheet that the motion for new trial was denied December 9, 2019.

Father filed a timely request for findings of fact and conclusions of law, but did not timely notify the trial court of past-due findings and conclusions. *See* Tex. R. Civ. P. 297 (requiring a party to file a notice of past due findings "within thirty days after filing the original request"). The trial court did not file findings of fact and conclusions of law and Father waived any complaint that the trial court failed to issue findings. *See Hardin v. Hardin*, 161 S.W.3d 14, 20 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (explaining that untimely filing of notice of past due findings results in waiver of any complaint that trial court failed to issue findings).

## ISSUES PRESENTED

In three issues on appeal Father asserts (1) the trial court committed harmful error in excluding the testimony of Don Brooks at the hearing on the motion for new trial; (2) the trial court abused its discretion in denying Father's motion for new trial; and (3) the trial court abused its discretion in ordering Father to pay all remaining amicus fees. Mother did not file a responsive brief in this court.

## ANALYSIS

### I. Standard of Review and Applicable Law

We review the trial court's denial of Father's petition to modify for an abuse of discretion. *See In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Trial courts have wide discretion with respect to custody, control, possession, support, and visitation matters."). The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet.

5

denied).

Under an abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error but instead are relevant factors assessed to determine if the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d at 899–900. Where, as here, the trial court fails to file findings of fact and conclusions of law following a bench trial, we infer all findings necessary to support the judgment and will affirm on any legal ground supported by the record. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When the appellate record includes both the reporter's and clerk's records, the implied findings are not conclusive and may be challenged for legal and factual sufficiency. *See Harris County v. Ramirez*, 581 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We indulge every reasonable inference that would support the challenged finding. *Id*. Evidence is legally sufficient "if it would enable reasonable and fair-minded people to reach the decision under review." *Id*.

For a factual sufficiency review, we examine the entire record and consider evidence favorable and contrary to the challenged finding. *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *In re J.R.P.*, 526 S.W.3d at 777. "It is not within the province of this court to interfere with the factfinder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony." *In re C.E.M.-K.*, 341 S.W.3d 68, 81 (Tex. App.—San Antonio 2011, pet. denied).

In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and "to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (quoting *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)). "As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute its judgment for that of the trial court." *In re J.R.P.*, 526 S.W.3d at 778.

To ensure stability and continuity for children's living arrangements, Texas law delineates the showing necessary to modify a trial court's conservatorship order. *See In re A.L.H.*, 515 S.W.3d 60, 79 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). The terms of a conservatorship may be modified only if (1) modification is in the child's best interest, and (2) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the date of rendition of the conservatorship order. Tex. Fam. Code § 156.101(a).

The existence of a material and substantial change in circumstances is a threshold determination. *In re A.L.E.*, 279 S.W.3d at 428. In making this determination, the trial court "is not confined to rigid or definite guidelines;" rather, the trial court's determination is fact-specific and must be made according to the circumstances as they arise. *Id*. Material changes may include (1) the marriage of one of the parties; (2) changes in the home surroundings; (3) mistreatment of the child; or (4) a party becoming an improper person to exercise custody. *Arredondo v. Betancourt*, 383 S.W.3d 730, 734-35 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The person seeking the modification has the burden of establishing a material and substantial change. *London v. London*, 94 S.W.3d 139, 145 (Tex. App.—

7

Houston [14th Dist.] 2002, no pet.).

"[N]ot every change in conditions justifies a change of custody, but only those changes which reasonably could be said to injuriously affect the child's best interests." *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. Civ. App.—Dallas 1981, no writ). Change alone does not justify modification unless changed needs also are shown. *See Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied). The policy behind the material-and-substantial-change requirement is to prevent constant re-litigation with respect to children and create stability in the conservatorship. *In re H.P.J.*, No. 14-17-00715-CV, 2019 WL 1119612, at *3–4 (Tex. App.—Houston [14th Dist.] Mar. 12, 2019, no pet.) (mem. op.).

To show that a material and substantial change in circumstances has occurred, the movant must show conditions as they existed at the time the prior conservatorship order was signed. *In re A.L.E.*, 279 S.W.3d at 428 (citing *Zeifman*, 212 S.W.3d at 589). Once these circumstances have been shown, the movant must show what material and substantial changes have occurred in the intervening period. *Id*.

**II.  The trial court did not abuse its discretion in excluding Brooks's testimony from the hearing on the motion for new trial.**

Father first contends that the trial court abused its discretion in excluding Brooks's testimony from the hearing on the motion for new trial.

Evidentiary decisions are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). To show that the trial court abused its discretion in excluding evidence, a complaining party must demonstrate that (1) the trial court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused the rendition of an improper

judgment. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a). *Matter of Marriage of Harrison*, 557 S.W.3d 99, 121 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Father has failed to demonstrate that Brooks's testimony would have been material to the trial court's decision on whether there was a material and substantial change in the circumstances of the child. Notably, Father does not contend on appeal that the evidence is legally or factually insufficient to support the trial court's conservatorship ruling or otherwise complain about the ruling. Father did not present Brooks as a witness at trial and did not assert that Brook's testimony was newly discovered evidence following the trial. Absent a complaint about the trial court's substantive ruling, it is difficult to see how the exclusion of evidence from the motion-for-new-trial hearing probably caused the rendition of an improper judgment. *See Watts v. Oliver*, 396 S.W.3d 124, 129–30 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that absent a complaint about the trial court's substantive ruling, appellant could not establish that exclusion of evidence probably caused rendition of an improper judgment).

Father also argues that the injunction against Brooks's testimony in the MSA was an unconstitutional prior restraint on speech. Father failed to preserve this issue by failing to raise it at trial or in his motion for new trial. *See* Tex. R. App. P. 33.1 (to preserve error appellant must show complaint was made to the trial court by timely request, objection, or motion).

On this record we cannot say that the trial court abused its discretion in excluding Brooks's testimony from the hearing of his motion for new trial. We overrule Father's first issue.

## III. The trial court did not abuse its discretion in denying Father's motion for new trial.

In Father's second issue he contends the trial court erred in denying his motion

9

for new trial. Specifically, Father alleges that his attorney "entered into an unauthorized settlement agreement." Father argues that his attorney hampered the presentation of Father's case by entering into the settlement agreement that contained the injunction prohibiting Brooks from testifying in Father's modification proceeding.

We review the trial court's denial of Father's motion for new trial under the abuse-of-discretion standard of review. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000); *Wichman v. Kelsey-Seybold Med. Group, PLLC*, No. 14-18-00641-CV, 2020 WL 4359734, at *2 (Tex. App.—Houston [14th Dist.] July 30, 2020, no pet.).

Attached to Father's motion for new trial was a copy of the MSA in a modification suit in which Brooks sought to modify the parent-child relationship between Brooks and Mother. The MSA contained the aforementioned injunction order against Brooks testifying in the modification proceeding between Father and Mother. One of Father's trial attorneys, Brian Walters, signed the agreed order as Brooks's attorney. Walters's signature appeared below a notation, "Approved as to Form Only." Brooks and Mother each signed the agreed order as parties to the MSA under a notation, "Approved and Consented to as to Both Form and Substance."

Father attacks the agreed order, which incorporated the MSA, as being void as against public policy because (1) the order "destroyed" evidence because it prohibited Brooks from testifying; (2) Father's attorney was not authorized to enter into the MSA; and (3) Father's attorney violated the Texas Disciplinary Rules of Professional Conduct when he entered into the MSA. It is undisputed that Father was not a party to the MSA or agreed order enforcing the MSA.

In challenging the injunction against Brooks testifying, Father attempts to collaterally attack the judgment. A direct attack—such as an appeal, a motion for

10

new trial, or a bill of review—attempts to correct, amend, modify, or vacate a judgment. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). A collateral attack seeks to avoid the binding effect of a judgment to obtain specific relief that the judgment currently impedes. *Id.* In general, a party to a final judgment may collaterally attack the judgment at any time after the time for filing an appeal has expired; however, in light of the policy favoring the finality of judgments, such attacks are disfavored and may only be made on the ground that the judgment was void, rather than merely voidable. *See id.* at 272–74 (recognizing that this rule "strikes a reasonable balance between the need for finality of judgments and the requirement that the power underlying judicial authority must be based on a litigant's fair opportunity to be heard"); *see also Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Therefore, parties to a divorce proceeding may collaterally attack a final judgment in their own case on the ground that it was void. *See, e.g., Ramsey v. Ramsey*, 19 S.W.3d 548, 552–53 (Tex. App.—Austin 2000, no pet.) (recognizing that "a divorce decree that is valid on its face and has not been appealed cannot be set aside in a subsequent suit by collateral attack"). However, a somewhat different analysis applies when, as here, a non-party seeks to collaterally attack a final judgment. Here, Father argues that Brooks's MSA and agreed judgment in Brooks's divorce impeded Father's ability to present evidence in the instant case.

An individual who is not a party to a final judgment lacks standing to collaterally attack the judgment, unless the individual can establish his or her interests are directly and necessarily affected by the judgment itself. *See In re Ocegueda*, 304 S.W.3d 576, 580–81 (Tex. App.—El Paso 2010, pet. denied) (attorneys who were non-parties to expunction proceeding lacked standing to collaterally attack expunction order). Having an "interest affected by the judgment" means having an interest in the subject matter to which the judgment relates. *Digilio*

*v. True Blue Animal Rescue*, No. 01-18-01087-CV, 2020 WL 4308709, at \*9 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.). Examples of nonparties whose interests are affected by a judgment are persons having an interest in land (such as an owner, a cotenant, or a person in lawful possession) who are not made a party to an action involving the land, a holder of a junior lien who has been ignored in a suit foreclosing a prior lien on the same property, and a creditor whose rights are prejudiced by a judgment pursued for the purpose of delaying, hindering, or defrauding the creditor. *See Grynberg v. Christiansen*, 727 S.W.2d 665, 667 (Tex. App.—Dallas 1987, no writ).

Conversely, having only a tangential or indirect interest in the judgment is insufficient to bestow standing upon a non-party for purposes of allowing a collateral attack on the judgment. *See, e.g., id*. at 667 (party lacked standing to collaterally attack a final judgment that was rendered in another proceeding, where his only asserted interest in doing so was to avoid the inconvenience of attending oral depositions and producing documents); *In re Ocegueda*, 304 S.W.3d at 580–81 (attorneys could not establish that they had standing to collaterally attack an expunction order where they were neither parties to the original expunction proceeding nor did they represent any of the parties to the proceeding).

In accord with these general principles, several courts, including at least three of our sister courts in Texas, have held that a non-party to a divorce proceeding lacks standing to collaterally attack a divorce decree where the individual had no pre-existing interest in the divorce proceeding itself. *See, e.g., Caballero v. Vig*, 600 S.W.3d 452, 459–60 (Tex. App.—El Paso 2020, pet. denied) (wife did not have standing to challenge the validity of annulment of marriage of trial judge); *Gilliam v. Riggs*, 385 S.W.2d 444, 446–47 (Tex. Civ. App.—Beaumont 1964, writ dism'd w.o.j.) (appellant, who was not a party to a divorce proceeding and was unable to

12

demonstrate that he had any interest in the divorce, had no right to challenge the validity of the divorce judgment); *Perry v. Copeland*, 323 S.W.2d 339, 344 (Tex. Civ. App.—Texarkana 1959, writ dism'd) (recognizing that daughter had no right to collaterally attack her father's divorce decree); *Kieke v. Cox*, 300 S.W.2d 309, 311 (Tex. Civ. App.—San Antonio 1957, no writ) (second husband of one of the parties to a divorce judgment that was regular and final on its face lacked sufficient interest to collaterally attack the same).

Relying on *In re Kasschau*, 11 S.W.3d 305 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding), *Johnson v. Ranch Guadalupe*, 789 S.W.2d 596, 598 (Tex. App.—Texarkana 1990, pet. denied), and *Hazelwood v. Mandrell Industries Co., Ltd.*, 596 S.W.2d 204, 206 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), Father argues that the MSA and the injunction contained in the agreed order are void. In each of those cases, however, the party challenging the order or agreement was a party to the order or agreement. *See Kasschau*, 11 S.W.3d at 308 (party to MSA sought judgment on a MSA); *Johnson*, 789 S.W.2d at 597–98 (parties to settlement agreement alleged their attorney was not authorized to enter into the agreement); *Hazelwood*, 596 S.W.2d at 205 (workers' compensation claimant alleged that employment contract was void as against public policy).

Because Father does not have standing to challenge the agreed order in Brooks's modification proceeding, the trial court did not abuse its discretion in denying Father's motion for new trial on the ground that the injunction in the MSA was unauthorized or void as against public policy. We overrule Father's second issue.

## IV. The trial court did not abuse its discretion in assessing amicus fees against Father.

The record reflects that before trial, the amicus attorney filed a motion to

compel attorney's fees and for sanctions. In the motion the amicus attorney stated that the trial court had previously ordered Father to pay $7,306.25 to the amicus as her fee. The motion further asserted that Mother owed the amicus $10,156.25 in fees. The amicus attorney later submitted an affidavit, which reflected that the total amount owed was $22,035, of which Father had already paid $9,000, and Mother had paid $800 leaving a balance of $12,235. The amicus represented that Mother was paying her portion of the amicus fees in installments. Father objected to the amicus fees noting that he had already paid the "vast majority" of the fees. In its final judgment the trial court ordered Father to pay $12,235, representing the amount of amicus fees owed at that time.

In Father's third issue he asserts the evidence was legally and factually insufficient to support the assessment of amicus fees against him. Father asserts the trial court abused its discretion in two ways when it ordered him to pay the amicus attorney's fees. First, Father asserts the fees were improperly assessed as sanctions. Second, Father asserts the trial court abused its discretion because the evidence is insufficient to support the assessment of amicus attorney's fees.

### A. The record does not reflect that the amicus fees were assessed as a sanction.

The Family Code authorizes a trial court to make a discretionary appointment of an amicus attorney in a suit affecting the parent-child relationship when the best interest of the children is an issue. *See* Tex. Fam. Code § 107.021; *In re Scheller*, 325 S.W.3d 640, 645 (Tex. 2010) (orig. proceeding) (per curiam). Pursuant to section 107.021 of the Family Code, the trial court appointed an amicus attorney in this proceeding. In its judgment the trial court ordered Father to pay $12,235 in amicus fees, but did not order Mother to pay amicus fees. In his motion for new trial and on appeal Father complains that Mother did not plead for amicus fees to be

14

assessed as sanctions and the evidence was legally and factually insufficient to support assessment of the fees as a sanction against him.

Contrary to Father's assertion, Mother did request sanctions against Father for filing a frivolous pleading. In a motion to deny relief, filed June 17, 2019, Mother requested sanctions pursuant to Texas Rule of Civil Procedure 13 and Chapter 10 of the Texas Civil Practice and Remedies Code because she alleged Father filed a groundless suit that was not in the best interest of the child. In opening statements Mother's attorney requested "attorney's fees, costs and – plus additional sanctions to prevent this kind of thing in the future." The trial court's judgment, however, did not assess amicus fees as sanctions.

Numerous sections in the Family Code authorize a trial court to award attorney's fees in a suit affecting the parent-child relationship ("SAPCR"). Section 106.002, applicable to all SAPCRs, vests a trial court with general discretion to render judgment for reasonable attorney's fees to be paid directly to a party's attorney. Tex. Fam. Code § 106.002(a); *see also Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) ("An attorney's fees award in a suit affecting the parent-child relationship is discretionary with the trial court."). In addition, the Legislature has enacted specific provisions that control awards of attorney's fees in certain types of cases under Title 5, including separate provisions for Chapter 156 modification suits and Chapter 157 enforcement suits. For example, section 156.005 requires that a trial court tax attorney's fees as costs against the offending party in modification suits if the court finds that the suit was "filed frivolously or is designed to harass a party." Tex. Fam. Code § 156.005. Section 156.005 requires a finding by the trial court that the suit for modification was filed frivolously or was designed to harass a party, and the court is required to state that finding in its order. Tex. Fam. Code § 156.005. The trial court made no such finding in this case.

Chapters 9 and 10 of the Texas Civil Practice and Remedies Code and rule 13 of the Texas Rules of Civil Procedure allow a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law. Chapter 9 of the Texas Civil Practice and Remedies Code only applies in proceedings in which neither Rule 13 nor Chapter 10 applies. Tex. Civ. Prac. & Rem. Code § 9.012(h). Rule 13 authorizes the imposition of the sanctions listed in Rule 215.2(b), which provides for a monetary penalty based on expenses, court costs, or attorney's fees. Tex. R. Civ. P. 13; *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Rule 13 requires: "No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order." Tex. R. Civ. P. 13. Chapter 10 requires that the court "shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." Tex. Civ. Prac. & Rem. Code § 10.005.

At trial, the attorneys agreed to have a separate hearing on attorney's fees and sanctions, which according to the trial court's judgment, was never held. The trial court considered the parties' attorneys' fees requests by submission and denied both parties' requests for attorneys' fees. The trial court then stated in its order:

> Having considered the pleadings on file, evidence presented, and arguments of counsel, the Court hereby GRANTS the request for attorney fees of Amicus Attorney, Tammy Simien Moon. THEREFORE,
>
> [Father] is ORDERED to pay directly in the offices of TAMMY SIMIEN MOON the amount of $12,235.00 by cash, cashier's check or money order by August 6, 2019.

The trial court did not reference sanctions, Rule 13, or any other statute permitting sanctions. The final judgment does not reference sanctions or contain any language pursuant to Rule 13 or Chapter 10 that is required to assess sanctions.

The record does not reflect that amicus fees were awarded as sanctions in this

case. Father is correct in noting that a trial court must make a finding of good cause before assessing sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure. Tex. R. Civ. P. 13. Under Chapter 10, the trial court must describe the conduct the court has determined violated section 10.001 and explain the basis for the sanction imposed. Tex. Civ. Prac. & Rem. Code § 10.005. Under the Family Code, before assessing sanctions, the trial court is required to state in its order that the suit for modification was filed frivolously or was designed to harass a party. Tex. Fam. Code § 156.005. Because the trial court made no such findings, we hold the trial court did not assess sanctions. *Cf. In re D.Z.*, 583 S.W.3d 284, 293–94 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (holding that trial court's award of attorney's fees because "good cause exist[ed] to award [Mother] attorney's fees" was sufficient to satisfy Rule 13's requirement of a sanction).

> **B.** **The evidence is legally and factually sufficient to support the trial court's assessment of amicus attorney's fees.**

Having determined the amicus fees were not assessed as sanctions, we review the trial court's award of amicus fees in a suit affecting the parent-child relationship for abuse of discretion. *In re R.H.W. III*, 542 S.W.3d 724, 743 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Section 107.023 of the Family Code gives the trial court wide discretion in awarding amicus fees and permits the trial court to assess the fees against either party or both parties. *See Tucker*, 419 S.W.3d at 300 (noting that section 107.023 specifically authorizes trial courts to characterize fees awarded to an amicus attorney as necessaries for the benefit of the child).

Father asserts the trial court abused its discretion because it did not consider the amounts already paid by the parties, the court's prior orders regarding allocation of amicus fees, and the amicus attorney's invoices reflecting amounts already paid to the amicus.

As noted in the court's judgment, the parties agreed to submit requests for attorney's fees in writing rather than participate in an oral hearing. The amicus attorney submitted an affidavit on July 8, 2019, which reflected a balance of $12,235 owed in amicus fees. The affidavit notes a previous balance of $11,550 plus new charges of $10,485, and credits the parties with $9,800 in payments. On December 9, 2019, in the hearing on the motion for new trial, held several months after judgment, Father testified that he paid the amicus attorney "$14,500, approximately." The evidence is therefore conflicting as to how much Father paid the amicus attorney before the trial court rendered judgment. It is also plausible that Father paid some of the amicus fees between the date of judgment and the hearing on the motion for new trial.

Viewing the conflicting evidence in the light most favorable to the trial court's ruling, we conclude Father has not shown the trial court abused its discretion in awarding amicus fees to be paid by Father pursuant to section 107.023. *See In re R.H.W. III*, 542 S.W.3d at 743 (holding trial court has discretion to assess amicus fees against one parent as necessaries for the child); *In re R.T.K.*, 324 S.W.3d at 899–900 (stating standard of review for sufficiency of evidence). Concluding the trial court did not assess amicus fees as a sanction and did not abuse its discretion in assessing fees to be paid by Father, we overrule Father's third issue.

CONCLUSION

Having overruled Father's issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
          Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

18