**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed July 27, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00240-CV

## IN THE MATTER OF THE MARRIAGE OF LISA PENAFIEL AND JOSE ALEJANDRO PENAFIEL

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2003-03866

## O P I N I O N

Jose Alejandro Penafiel appeals from the trial court's divorce decree and final judgment dissolving his marriage to Lisa Penafiel and purporting to enforce the parties' mediated settlement agreement (MSA). The judgment also held Alejandro fraudulently induced Lisa to sign the MSA and awarded her tort damages. In five issues, Alejandro contends that the trial court erred in (1) incorrectly stating in its final decree and judgment that he approved it as to form and substance, (2) improperly adding to and changing terms from the MSA in the

decree, (3) purporting to make a just and right division of the property in the decree that was different than what was agreed to in the MSA, (4) dividing the community estate without evidence of what was in the community estate, and (5) finding Alejandro fraudulently induced Lisa to sign the MSA. We conclude that the evidence supports the trial court's finding that Alejandro fraudulently induced Lisa to sign the MSA and the court's determination of the value of the community estate; however, the trial court improperly attempted to enforce the MSA and award damages in its final decree. Accordingly, we affirm the trial court's judgment in part and reverse and remand in part for entry of a new final decree.

## *Background*

Lisa and Alejandro were married on December 19, 1981. It is undisputed that the parties did not live together for much of the marriage. In January 2003, Lisa filed the present proceedings for divorce.[1] A receiver was appointed concerning the parties' marital estate, and the receiver in turn employed an appraiser, who valued the community estate at approximately $416,600,000 as of October 2016. On Alejandro's motion, the trial court ordered the parties to mediation. The parties thereafter signed an MSA on August 3, 2017.

Key terms of the MSA include:

- The parties agreed to settle all matters in the then-pending lawsuit and stipulated that the terms of the MSA constituted a fair and just division of their assets and liabilities. The parties also released each other from any claims that either may have held against the other unless expressly reserved in the MSA. Also, all relief requested by either party in the underlying case not addressed in the MSA was to be denied.

- A divorce was to be granted on the ground of insupportability of the

---

[1] Lisa had previously filed for divorce in Texas but did not pursue the case, and Alejandro had previously filed for divorce in Ecuador and obtained a judgment, for which the court below did not grant comity. Neither of these prior proceedings play any role in this appeal.

marriage. Each party warranted that they had made a full disclosure of all property and obligations of the parties (both community and separate) and that the MSA divided, confirmed, or allocated all such items.

- The parties agreed to submit all drafting disputes and questions concerning interpretation of the MSA and the intent of the parties to the mediator until the divorce became a final judgment.

- The provisions were to be incorporated into an agreement incident to divorce and a final decree of divorce. The MSA was also confirmed as binding pursuant to Texas Family Code section 6.602.

- Each party agreed to pay their own unpaid attorney's fees and litigation expenses; all debts, encumbrances, and taxes due on the property they were awarded; and all debts they had independently incurred.

- Regarding the marital estate, "[e]ach party [was] to keep their own property in their possession or in their name." Alejandro was also to purchase a fully funded and guaranteed annuity that would pay Lisa "no less than $10,000 per month for her lifetime." The terms of the annuity and the issuing financial institution had to be acceptable to both parties, and the final divorce decree was not to be filed until the annuity was agreed upon and fully funded. Alejandro was also required to pay Lisa $150,000 at the time the decree was entered.

- The parties also agreed to pay the receiver out of funds from a lawsuit settlement, and if he was not paid from the settlement funds, each party was to pay him 50 percent of his fees not to exceed $10,000 each.

After both parties and their respective attorneys signed the MSA, communications began about securing and funding the annuity that Alejandro was to obtain for Lisa. Although these communications will be discussed in greater detail later in this opinion, suffice it to say at this point that Lisa describes the communications as a series of excuses and delays by Alejandro and his attorney that led her to conclude that Alejandro had never intended to fulfill his promises, and Alejandro describes the efforts as logical steps toward securing a mutually agreeable annuity. To date, Alejandro has never funded an annuity or paid Lisa the

3

$150,000 as required by the MSA.

Lisa filed a motion to set aside the MSA on the ground that she was fraudulently induced into signing it. At a hearing on the motion, Lisa's counsel urged the court to not rule on the motion at that time but expedite the trial at which they could present evidence on the issue of fraudulent inducement. The trial court did not rule on the motion at that time but subsequently overruled it without stating why. Meanwhile, Lisa also amended her divorce petition to add a tort claim for fraudulent inducement of the MSA. Alejandro's two attorneys withdrew before the trial date—one cited communication issues with Alejandro and one stated Alejandro requested he withdraw. Alejandro failed to appear for trial.

During the bench trial, the trial court admitted into evidence Lisa's summary of the attempts to get Alejandro to fund the annuity, a large number of emails between counsel representing each party on that same topic, and the appraiser's detailed report concluding the community estate was worth approximately $416,600,000 as of October 2016. The trial court also took judicial notice of certain things in the court's files, including the motions to withdraw of Alejandro's trial counsel and Alejandro's pro se motion to enforce the MSA.

Lisa testified at trial regarding the history of the marriage and about the community estate. She said that Alejandro had no property when they got married but acquired a 50 percent interest in a company called Tripetrol during the marriage through his time, toil, and talent. Alejandro acknowledged this ownership in his deposition. Lisa explained that much time and money was spent obtaining information on community property in many different countries, including Ecuador, Spain, Argentina, the United Kingdom, Switzerland, Russia, Canada, and Guatemala. She identified around 13 different companies and properties that Alejandro acquired using community funds and put in the names of corporate

4

fronts, other women that he married during his marriage to Lisa, and mistresses. She also said that he knowingly made false representations concerning community ownership of property, hid assets, and lied about stock transfer records.

Lisa further asserted that Alejandro has not done anything he promised to do in the MSA and indeed never did "a single thing to perform under the [MSA]." She said that she relied on his promises in the MSA in signing the MSA and at the time thought he intended to perform. The MSA was a "great deal for him," she said, and it was reasonable for her to rely on his promises. She explained, however, that she later changed her mind and believes he never intended to perform because he kept delaying his performance, saying "[w]e're getting it done" and "[w]e're about to do it," dragging it out for months while actual performance never occurred. Lisa also insisted that she was damaged by relying on Alejandro's promises because she otherwise could have pursued a share of the $416 million community estate. Lisa requested that the court set aside the MSA and award her 60 percent of the community estate.

Lisa's attorney testified regarding attorney's fees and litigation costs, and the trial court admitted records into evidence in support of his testimony. At the conclusion of the bench trial, the judge announced that she was granting the divorce, ruling in favor of Lisa on the fraudulent inducement claim, awarding her "damages" of $249,600,000 along with attorney's fees and litigation expenses. The trial court did not issue findings of fact or conclusions of law.

Beyond dissolving the parties' marriage, the trial court's Final Decree of Divorce and Final Judgment includes the following key rulings:

- Regarding the decree itself, the court stated that the parties "entered into a written agreement . . . by virtue of having approved [the]

5

Decree as to both form and substance."[2]

- Regarding the MSA, the court held that "although [Lisa] was fraudulently induced by [Jose] to enter into the [MSA] such agreement cannot be revoked under law and the Court therefore finds it enforceable against both parties and incorporates it by reference as part of this Decree as if it were recited herein verbatim." The court ordered both parties "to do all things necessary to effectuate the agreement" but also pronounced that terms of the final decree were to control over terms of the MSA in the event of any conflict.

- The court also stated that the MSA was enforceable and all property acquired during the marriage was community property and made findings regarding the division of property that it said were "consistent" with the MSA. These rulings included awarding Lisa all personal property in her possession, all real and personal property acquired by either party during the marriage that was not specifically awarded to Alejandro in the decree, all cash in her possession or subject to her sole control, all amounts in various types of accounts related to her employment and retirement, all life insurance policies insuring her life, all amounts in various types of financial accounts in Alejandro's name, and all motor vehicles in her possession or titled in her name.

- The court then awarded Alejandro all personal property in his possession, all cash in his possession or subject to his sole control, all amounts in various accounts related to his employment and retirement, all life insurance policies insuring his life, all amounts in various financial accounts that Alejandro "can prove by clear and convincing evidence were held or registered in solely" his name, and all motor vehicles "in [his] possession and titled in his name."

- Regarding liabilities, the decree made Alejandro responsible for all debts and liabilities incurred by either party during the marriage "unless express provision is made in this Decree to the contrary." The decree made Lisa responsible for all debts incurred solely by her and all debts and taxes due on property awarded to her.

---

[2] The parties agree that this statement was clearly incorrect as Alejandro did not approve the decree. This statement is the basis for Alejandro's first issue discussed below.

- The decree also has lengthy provisions regarding federal income taxes, including making Alejandro solely responsible for all such tax liabilities of the parties throughout the marriage but giving each party equal share of any tax refund.

- Under the heading "Court Costs and Sanctions," the decree awarded Lisa a judgment of $134,830.40 "for costs of Court and discovery costs and expenses" as a sanction under Texas Rules of Civil Procedure 215.2(b) and 215.3, presumably for discovery issues that arose during the case.

- Under the heading "Judgment on Petitioner's Fraud and Fraudulent Inducement Claims," the decree states that having considered its own record, the hearings and briefs since the parties executed the MSA, the statements made in open court by Alejandro's attorneys, the evidence presented at trial, and the arguments of counsel, the court found that Alejandro induced Lisa into signing the MSA by making false representations of future performance with no intention of performing them, Alejandro intended for Lisa to rely on those false representations in executing the MSA, and Lisa did reasonably rely on the false representations in executing the agreement. The court further found, based on the evidence at trial, that had the divorce case proceeded to trial, the value of the parties' community estate would have been found to be $416 million and that a just and right division would have been to award Lisa 60 percent of the community estate.

- The court also found that Alejandro committed actual and constructive fraud on the community estate within the meaning of Family Code section 7.009(b), and that the parties' reconstituted community estate, calculated pursuant to section 7.009(b)(l), would be $416 million. And the Court found that had the case proceeded to trial without an MSA, the court would have awarded Lisa 60 percent of the community estate as part of a just and right division. The decree then states that pursuant to section 7.009(c)(2), "the Court would have awarded" Lisa a judgment of $249,600,000.

- The decree then states that: "Accordingly, the Court finds that [Lisa] has been damaged by [Alejandro's] fraudulent inducement of the [MSA] in the amount of [$249,600,000] and awards her judgment against [Alejandro] in that amount."

7

- The court next discharged the receiver and awarded the receiver a judgment against Alejandro for $20,825.26. Lastly, the court granted Lisa's attorney a judgment against Alejandro for $1,822,808 in attorney's fees.

Alejandro filed a pro se motion for new trial in which he pointed out he did not approve the decree, argued many of the terms in the decree did not comport with the MSA terms, challenged the fraudulent inducement finding, and urged that the MSA should control. The trial court did not rule on the motion, which was denied by operation of law. *See* Tex. R. Civ. P. 329b(c).

## *Discussion*

The Family Code provides that MSAs meeting certain statutory formalities are binding on the parties and require the rendition of a divorce decree that adopts the parties' agreement. Tex. Fam. Code § 6.602(b)-(c); *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012).[3] Unlike other family law agreements, a trial court is not required to determine if the property division in an MSA is "just and right" before entering a final decree based on the MSA. *Milner*, 361 S.W.3d at 618. As numerous courts of appeals have explained, including this court, the statute does not require enforcement of an MSA that is illegal in nature or procured by fraud,

---

[3] In relevant part, the statute provides:

(b) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

Tex. Fam. Code § 6.602.

8

duress, coercion, or other dishonest means. *Id.* (collecting cases, including *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding)); *see also Marriage of Atherton*, No. 14-17-00601-CV, 2018 WL 6217624, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2018, pet. denied) (mem. op.); *Torres v. Torres*, No. 14-12-00436-CV, 2013 WL 776278, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2013, no pet.) (mem. op.).

Here, Lisa urged the trial court to set aside the parties' MSA because Alejandro fraudulently induced her into signing it. Although the trial court agreed that Alejandro fraudulently induced Lisa into signing the MSA, the court nonetheless decided to enforce the MSA in the final decree while also awarding Lisa a money judgment on her fraud claim. We will begin by addressing Alejandro's challenge to the fraudulent inducement finding. We will then turn to the question of whether the trial court properly attempted to enforce the MSA while also awarding tort damages for the fraudulent inducement of that agreement. Lastly, we will address Alejandro's remaining issues and arguments and discuss the proper disposition of the appeal.

## I. Standards of Review

A trial court's determination of whether to set aside an MSA for reasons other than conformity with section 6.602 is reviewed under an abuse of discretion standard. *See Atherton*, 2018 WL 6217624, at *2; *Davis v. Davis*, No. 01-12-00701-CV, 2014 WL 890899, at *4 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.); *Mueller v. Mueller*, No. 01–11–00247–CV, 2012 WL 682285, at *2 (Tex. App.—Houston [1st Dist.] March 1, 2012, pet. denied) (mem. op.). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to guiding rules or principles. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The failure to analyze or apply the law

correctly also constitutes an abuse of discretion. *Id*. A trial court does not abuse its discretion if it correctly follows the law and there is some evidence of a substantive and probative character to support its decision. *See id*.

When, as here, the trial court did not file findings of fact and conclusions of law, we imply all findings necessary to support the judgment and will uphold those findings if sufficient evidence supports them. *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.). However, to the extent the trial court included fact findings in its judgment, though erroneously placed, we will consider these findings as they do not conflict with findings in a separate document. *See Isaac v. Burnside*, 616 S.W.3d 609, 614 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

When the proper standard of review is abuse of discretion, challenges to the sufficiency of the evidence are not independent grounds for reversal, but instead are factors to be considered in determining whether the trial court abused its discretion. *In re J.R.P.*, 526 S.W.3d at 777. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id*.

## II. Fraudulent Inducement

Lisa alleged that Alejandro fraudulently induced her into signing the MSA because he made promises in the MSA that he did not intend to keep at the time they were made. In Alejandro's fifth issue, which he styles the "lynchpin issue," he challenges the trial court's finding of fraudulent inducement.

10

**A. Governing Law**

To be successful on a fraud claim, a party must present proof of a material misrepresentation that (1) was false, (2) was either known to be false when made or was asserted without knowledge of its truth, (3) was intended to be acted upon, (4) was relied upon, and (5) caused injury. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made. *Id.*; *Adam v. Marcos*, 620 S.W.3d 488, 507 (Tex. App.—Houston [14th Dist.] 2021, pet. filed).

A fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract. *Formosa Plastics*, 960 S.W.2d at 46. Intent is typically a fact question for the factfinder as it often turns on witness's credibility and the weight to be assigned to their testimony. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986); *Adam*, 620 S.W.3d at 508. Because intent to defraud is not usually susceptible to direct proof, circumstantial evidence is typically required. *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774-75 (Tex. 2009).

In this context, there must be evidence relevant to intent when the promise was made. *See Formosa Plastics*, 960 S.W.2d at 48; *Adam*, 620 S.W.3d at 508; *Anglo-Dutch Petroleum Int'l, Inc. v. Smith*, 243 S.W.3d 776, 780 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Intent to defraud may be inferred from a party's subsequent acts after a promise is made. *Aquaplex*, 297 S.W.3d at 775; *Spoljaric*, 708 S.W.2d at 434. The failure to perform a promise standing alone is

11

not sufficient to establish this intent, but it is a circumstance the factfinder can consider along with other facts in establishing intent. *Spoljaric*, 708 S.W.2d at 435; *Adam*, 620 S.W.3d at 508-09; *SEECO, Inc. v. K.T. Rock, LLC*, 416 S.W.3d 664, 671 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Mueller*, 2012 WL 682285, at *3. A breach of the promise plus "slight circumstantial evidence" is usually sufficient. *See Spoljaric*, 708 S.W.2d at 435; *Adam*, 620 S.W.3d at 508-09; *SEECO*, 416 S.W.3d at 671.

### B. Application of Law to Facts

Alejandro contends that the trial court incorrectly found fraudulent inducement based solely on evidence of delayed performance, which he insists was at most a breach of the agreement. The trial court, however, clearly based its finding on more than just delayed performance.

We begin by reiterating that Alejandro's failure to perform is a circumstance the court could consider, along with other facts, to establish intent. *See Spoljaric*, 708 S.W.2d at 435; *Adam*, 620 S.W.3d at 508-09; *SEECO*, 416 S.W.3d at 671; *Mueller*, 2012 WL 682285, at *3. Although the MSA did not specify a date by which Alejandro had to purchase the annuity and pay Lisa the promised $150,000, these actions had to be accomplished before or at the time the final decree was entered. It is well settled that when a contract does not specify a deadline for performance, the law implies that performance must be within a reasonable time. *See*, *e.g.*, *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 827 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944), et al.). According to statements in the emails admitted at trial, the parties discussed setting the case for entry of the MSA around 60 days after it was signed to give Alejandro time to obtain the annuity and cash due by the entry date. Alejandro's attorney indicated this was sufficient time, and Lisa's

attorney thought this was more time than needed. Although Alejandro asserts that obtaining the annuity proved difficult, he does not specifically complain that he did not have a reasonable time in which to perform his promises under the MSA. The MSA was signed on August 3, 2017, and the trial occurred on December 5, 2018, over sixteen months later. Alejandro never paid Lisa the $150,000 or obtained the annuity as promised.

In addition to Alejandro's failure to perform, the evidence regarding intent came from Lisa's testimony and the emails between counsel. As discussed above, Lisa testified that she came to believe Alejandro never intended to perform because he kept delaying performance while saying things like, "We're getting it done" and "[w]e're about to do it," but never actually doing "a single thing to perform under the [MSA]." Lisa also testified that Alejandro hid community assets, knowingly made false representations concerning community ownership of assets, and lied about stock transfer records. She identified approximately 13 different companies and properties that Alejandro acquired using community funds and put in the names of corporate fronts and other women. The expert appraiser's report generally supports Lisa's statements regarding the companies and properties.

The emails between counsel reveal that Lisa's counsel frequently sent requests for status updates and explanations from August 2017 to May 2018, to which Alejandro's counsel typically responded with statements indicating they were close to obtaining the annuity and the cash. As time went by, however, Alejandro's counsel began to make more and more excuses for nonperformance, stating it was difficult to get anything done because it was summer vacation time in Europe, then no bank in Europe offered this type of simple annuity product, then the Patriot Act was keeping them from getting money transferred from Russia. Throughout all these communications, Alejandro's counsel offered cause for hope:

in August 2017, Alejandro unilaterally set the case for entry of the final decree; on September 11, counsel stated the final order was drafted and they just needed to drop in the details for the annuity; she reiterated this on September 20 and added that the arrangements for the cash payment had already been made; on September 26, she stated she was putting the details of a New York annuity into the order and would get it to Lisa's counsel that week; in mid-October, Alejandro's counsel sent three annuity plan descriptions for approval; on December 1, counsel stated that she would have the annuity plan to Lisa's counsel that day; on December 20, counsel wrote that she expected funds for the $150,000 and to pay the receiver the next week; six days later, she said she expected the funds the following week; on January 3, 2018, counsel stated that she thought the annuity would be funded on the 22nd and she had everything drafted and was just waiting on the funding documents; on January 5, she stated that she was trying to get Alejandro to pay the cash portion "now"; on January 16, counsel said that a loan had been approved and funds would be available that month; on January 22, she said that they were trying to get cash to Lisa before a scheduled hearing and to fund the annuity by the 29th; on January 26, counsel stated "I have the entire thing put together" and indicated that they were using a Swiss bank to fund the annuity by February 28 and would get the first $10,000 to Lisa by that Monday. On February 8, counsel stated that funding was ahead of schedule and she was going to send Lisa's counsel information on yet another annuity option. On February 23, Alejandro's counsel stated that they should have funding confirmation by that Monday.

There then follow several emails from Lisa's counsel and the receiver requesting updates, but the record does not contain any responses to these requests. Then, on April 17, Alejandro's counsel stated that if the judge would let her out, she was withdrawing from representation of Alejandro. The judge ultimately

14

granted the request to withdraw. As for the basis of her motion to withdraw, which the trial court took judicial notice of, counsel stated: "Good cause exists for withdrawal of [counsel] in that she is unable to effectively communicate with [Alejandro] in a manner consistent with good attorney-client relations." The record also reflects that Lisa's counsel attempted to contact a London solicitor in April and May 2018 who was supposedly working with Alejandro on fulfilling his obligations, but counsel's calls and emails went unanswered.

From this evidence, the trial judge could have reasonably concluded that Alejandro never intended to fulfill his promises made in the MSA. Alejandro undisputedly failed to perform. From the context, the judge could have concluded that Alejandro was feeding his counsel deliberate falsehoods regarding progress on fulfilling his promises of obtaining an annuity and paying Lisa $150,000. The emails suggest Alejandro's counsel was routinely being told that performance was happening or was on the verge of happening, but it never did. The evidence that Alejandro had a history of hiding community assets also supports the conclusion that he intentionally made false promises and further false statements regarding efforts to fulfill those promises. The court could have reasonably concluded that Alejandro made the initial promises and then continued to make promises and false statements as part of a scheme to buy time to further hide and shield assets. It was reasonable to conclude from this evidence that Alejandro made a promise of future performance with no intention of performing at the time it was made and with the intention that Lisa rely on the promise. *See Zorrilla*, 469 S.W.3d at 153; *Adam*, 620 S.W.3d at 507; *see also Aquaplex*, 297 S.W.3d at 775 (explaining that an intent to defraud may be inferred from a party's subsequent acts after a promise was made); *Spoljaric*, 708 S.W.2d at 434 (same). Lisa also testified regarding the reasonableness of her reliance on Alejandro's unfulfilled promises, and her

15

damages were well supported by her own testimony and the appraiser's valuation report. *See Zorrilla*, 469 S.W.3d at 153; *Adam*, 620 S.W.3d at 507.

### C. Alejandro's Contentions

Alejandro makes several additional arguments regarding fraudulent inducement. First, Alejandro asserts that his nonperformance of the contract was excused by Lisa's "repudiation" of the contract, i.e., her filing of a motion to set aside the MSA, which was, of course, based on Alejandro's failure to perform. The motion, however, clearly was not a repudiation of the MSA—it was a request that *the court* set aside the otherwise binding agreement because Alejandro had fraudulently induced Lisa into signing it. Alejandro cites cases explaining that a plaintiff in a breach of contract action need not tender performance of the contract before bringing suit against a party that has repudiated the contract. *See*, *e.g.*, *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008). These cases do not support Alejandro's position. Moreover, Alejandro does not cite to where he raised this argument below. *See Garcia v. Alvarez*, 367 S.W.3d 784, 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("A party's argument on appeal must comport with its complaint in the trial court.").

Alejandro next points out that Lisa herself raised questions regarding how the annuities were structured that he says caused delays in his performance. The record demonstrates, however, that these questions—whether the $10,000 Lisa was to receive from the annuity each month was to be pre- or post-tax and whether a trust could own the annuity—were resolved quickly and caused at most very brief delays.[4]

---

[4] The dispute regarding whether proceeds were to be pre-tax or post-tax was submitted to an arbitrator and resolved in less than a month. The dispute regarding whether a trust could own the annuity was resolved by agreement within two weeks.

In his reply brief, Alejandro suggests that the trial court improperly considered the fraudulent inducement claim at trial because the court had already denied Lisa's motion to set aside the MSA, which was based on fraudulent inducement. Alejandro states that in considering the claim at trial, the court violated the doctrines of res judicata and the law of the case. However, neither doctrine applies under these circumstances. *See generally Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) ("The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages."); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (explaining that application of res judicata requires proof of a prior final judgment on the merits, identity of parties or those in privity with them, and a second action based on the same claims as were raised or could have been raised in the first action). Moreover, the trial court does not appear to have denied the motion to set aside on the merits of the fraudulent inducement claim but because Lisa's counsel asked the court to address the issue at trial. And, had the court ruled on the merits, the court possessed authority to reconsider its ruling at trial. *See Moring v. Inspectorate Am. Corp.*, 529 S.W.3d 145, 150 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("The trial court holds continuing authority to reconsider its interlocutory orders while it has plenary power over the case.").

**D. Conclusion**

The evidence supported the trial court's determination that Alejandro fraudulently induced Lisa into signing the MSA. *See City of Keller*, 168 S.W.3d at 822, 827; *In re J.R.P.*, 526 S.W.3d at 777. Accordingly, we overrule Alejandro's fifth issue. We now turn to the parties' arguments regarding the trial court's final judgment.

### III. Double Recovery

In its Final Decree of Divorce and Final Judgment, the trial court both stated that it was (1) enforcing the MSA and making further orders consistent with the agreement and (2) awarding damages to Lisa for fraudulent inducement, which it calculated based on the value of a just and right division of the community estate that the court would have entered had there not been an enforceable MSA. Among other arguments under his fourth issue, Alejandro contends that this amounted to a double recovery for Lisa and was an abuse of discretion.

In the final decree and judgment, the court stated:

> The Court FINDS that, although [Lisa] was fraudulently induced by [Alejandro] to enter into the MSA such agreement cannot be revoked under law and the Court therefore finds it enforceable against both parties and incorporates it by reference as part of this Decree as if it were recited herein verbatim. [Lisa] and [Jose] are ORDERED to do all things necessary to effectuate the agreement.

But, as discussed above, this and several other courts of appeals have explained that trial courts in divorce actions are not required to enforce an MSA procured by fraud, even if the MSA meets the requirements of Family Code section 6.602. *See*, *e.g.*, *Milner*, 361 S.W.3d at 618; *Atherton*, 2018 WL 6217624, at *4. The trial court was therefore incorrect in concluding, as it apparently did, that the MSA had to be enforced despite the fraud finding.

Typically, when an MSA is determined to be procured by fraud, the proper remedy would be to set aside the MSA and proceed as though there were no MSA. *See*, *e.g.*, *In re Hanson*, No. 12-14-00015-CV, 2015 WL 898731, at *3 (Tex. App.—Tyler Feb. 27, 2015, no pet.) (mem. op.) ("[A]n MSA procured by misrepresentation and fraud should not be enforced."); *Koelm v. Koelm*, No. 03-10-00359-CV, 2011 WL 2162879, at *4 (Tex. App.—Austin June 2, 2011, no pet.)

(mem. op.) ("[I]f [husband] obtained [wife's] participation in the mediated settlement agreement by fraud, we would conclude that it is unenforceable."); *cf. Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.) (holding trial court properly concluded that MSA was unenforceable where one spouse intentionally withheld information about substantial marital assets). Here, however, the court apparently felt compelled to attempt to enforce the degree but then also award tort damages to Lisa based on a just and right division of the entire community estate.

Specifically, the trial court awarded Lisa a money judgment of $249,600,000 for fraudulent inducement damages based on 60 percent of the community estate valued at $416 million. But, in purporting to enforce the MSA provisions, the court also awarded Lisa all real property acquired by either party during the marriage, all personal property in her possession, all personal property acquired by either party during the marriage that was not in Alejandro's possession, all cash in her possession or subject to her sole control, all amounts in various types of accounts related to her employment and retirement, all life insurance policies insuring her life, all amounts in various types of financial accounts in Alejandro's name, and all motor vehicles in her possession or titled in her name. Presumably, Alejandro would also still be required under the MSA—which was incorporated into the decree and which the parties were ordered to effectuate—to provide Lisa with an annuity and $150,000 cash. The final decree additionally made Alejandro responsible for more of the parties' marital debts and liabilities, including taxes.[5]

---

[5] It should also be noted that—as Alejandro points out in his second and third issues— even when it comes to enforcing the provisions of the MSA, the final decree does not consistently follow the terms of the MSA. *See, e.g.*, *Diggs v. Diggs*, No. 14-11-00854-CV, 2013 WL 3580424, at *10 (Tex. App.—Houston [14th Dist.] July 11, 2013, no pet.) (mem. op.) ("The Family Code does not authorize a court to modify an MSA, to resolve ambiguities or otherwise, before incorporating it into a decree."). As one of many examples, the MSA awarded Alejandro

Awarding Lisa a monetary judgment for the value she would have received from a just and right division of the community estate while also still awarding her the community estate property and other considerations she would have received under the MSA resulted in the trial court neither enforcing the MSA under Family Code section 6.602 nor making a just and right division of the community estate under section 7.001 but essentially combining the two and awarding Lisa what she would have received under both statutes. Tex. Fam. Code §§ 6.602, 7.001. Alejandro contends that this resulted in a double recovery. A double recovery occurs in tort cases when a party obtains more than one recovery for the same injury. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). It violates the one-satisfaction rule. *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 113 (Tex. 2018). Whether the rule itself applies to the division of a marital estate (which is not dependent on a finding of an injury) is unclear, but the rationale behind the rule certainly does apply. *See Vickery v. Vickery*, No. 01-94-01004-CV, 1997 WL 751995, at *31-33 (Tex. App.—Houston [1st Dist.] Dec. 4, 1997, pet. denied) (not designated for publication) (considering application of one satisfaction rule in divorce case where wife also had a tort claim and holding that wife forfeited right to monetary award for loss of marital property by accepting marital property division but wife did not forfeit mental anguish damages or exemplary damages).[6] The trial court's awarding Lisa what she would have received under the MSA and what she would have received from a just and right division of the property, even though based on a tort finding, was an abuse of

all property in his possession or in his name, but the decree awarded Lisa all real property in the community estate, all personal property not in Alejandro's possession, and all of various financial accounts in Alejandro's name. These awards were clearly not consistent with the MSA.

[6] The continuing validity of some of the court of appeals' specific holdings in *Vickery* has been called into question, *see Vickery v. Vickery*, 999 S.W.2d 342 (Tex. 1999) (Hecht, J., dissenting to denial of pet. for review); however, we cite it merely as an example of the application of the one-satisfaction rule in the divorce context.

discretion as it provides her with a double recovery, neither enforces the MSA nor provides for a just and right division of the property, and is without reference to guiding rules or principles of family or tort law. *See In re J.R.P.*, 526 S.W.3d at 777; *Vickery*, 1997 WL 751995, at *31-33. Accordingly, we sustain Alejandro's fourth issue in part and remand this case for entry of a new final judgment.

## IV. Remaining Issues

In his first issue, Alejandro contends that the trial court erred by stating in the decree that he had agreed to the decree's form and substance. Lisa agrees with this contention. However, because we are reversing and remanding for entry of a new decree in this case, issue one is moot.

In his second and third issues, Alejandro contends that the trial court erred in modifying the terms of the MSA. Although Alejandro is clearly correct that the MSA terms were materially altered in the decree, *see supra* note 5, these issues are also rendered moot by the remand in this case.

In his fourth issue, in addition to the double-recovery argument discussed above, Alejandro also argues that the evidence was legally insufficient to support the trial court's determination that the community estate owned the assets described and valued in the appraiser's report. Alejandro, however, does not support this contention with appropriate citations to the record or authority or a discussion of the evidence admitted at trial. *See* Tex. R. App. P. 38.1(i) (requiring that appellate briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Moreover, as discussed above, Lisa testified regarding community property in many different countries, and she identified approximately 13 different companies and properties that Alejandro acquired using community funds and put in the names of fronts. The appraiser's report also describes the appraiser's own research and conclusions

21

regarding the community estate. This evidence was sufficient to support the trial court's findings. *See City of Keller*, 168 S.W.3d at 822, 827; *In re J.R.P.*, 526 S.W.3d at 777. Accordingly, we overrule Alejandro's fourth issue as to the sufficiency of the evidence challenge.

### *Disposition*

We affirm the portions of the trial court's judgment granting the divorce and Lisa's name change. We further affirm the holdings that Alejandro fraudulently induced Lisa into signing the MSA and committed fraud against the community estate and as to the value of the community estate. And we affirm the awards to Lisa of litigation expenses as sanctions and of attorney's fees. We reverse the portions of the judgment that purported to enforce the MSA and otherwise divide the parties' marital assets and liabilities and that awarded Lisa a money judgment for fraudulent inducement.[7] We remand for entry of a new final decree in accordance with this opinion.

/s/     Frances Bourliot
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

---

[7] Contrary to some of the briefing in this case, the trial court's money judgment award was based only on fraudulent inducement and not the fraud against the community finding.

22