# IN the INTEREST OF J.R.P.

## NO. 14-15-00912-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed July 11, 2017

---

24. *Ante* at 762.

25. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805–06 (Tex. 2010).

26. *Id.*

Charles G. Kingsbury, Friendswood, TX, for Appellant.

Rodney C. Wiseman, Lake Jackson, TX, for Appellee.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

John Donovan, Justice

A.M. and J.P. are the parents of J.R.P., a minor child.[1] A.M., who is appealing the order modifying conservatorship, contends that the trial court abused its discretion in granting the motion. We affirm.

## I. Background

After a conservatorship of a child has been established, it cannot be attacked in less than one year unless the movant states under oath that the child is endangered, or under other facts not relevant here. Tex. Fam. Code § 156.102. Here, the governing conservatorship order was entered in December 2013, granting A.M. and J.P. joint managing conservatorship of their son, J.R.P., and giving A.M., as the primary joint conservator, the exclusive right to determine the child's primary residence. In May 2014, J.P. filed a petition to modify that order, requesting the court give him the exclusive right to determine J.R.P.'s primary residence. J.P. alleged in his affidavit the following:

1. We use only the initials for the mother, father, and child to protect the child's identi-

It has come to my attention that [A.M.] has been taking drugs while in possession and control of our son [J.R.P.]. Such an environment would endanger our child's physical health or significantly impair our child's emotional development.

A temporary orders hearing was conducted on June 23, 2014. A.M. requested dismissal, alleging J.P.'s affidavit was insufficient to support a modification filing within one year of a final judgment. The court sustained A.M.'s objection, finding the affidavit insufficient; however, it declined to dismiss the case. The parties agreed A.M. would submit to drug testing, which the court ordered to take place the following day.

On July 15, 2014, J.P. filed a first amended petition to modify conservatorship. J.P. amended his affidavit to reflect A.M. testing positive for drug usage. J.P.'s amended affidavit stated, in pertinent part:

According to United States Drug Testing Laboratories test results, [A.M.] has been taking drugs while in possession and control of our son [J.R.P.]. A correct copy of the drug test results are attached hereto as Exhibit A and incorporated herein for all purposes. Accordingly, the living environment [A.M.] subjects our child to endangers our child's physical health and in all probability significantly impairs our child's emotional development.

On that same date, the trial court conducted a temporary orders hearing. The parties were both represented by counsel. After the hearing, however, A.M.'s attorney filed a motion to withdraw which was granted.

ty. See Tex. R. App. P. 9.8.

On August 29, 2014, the court entered temporary orders, noting the parties appeared on July 15, and that "[t]he Court, after examining the record and the agreement of the parties and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and all of the parties." The trial court found from the evidence presented that "the present living environment significantly impairs the physical health and/or emotional development of the child." The trial court set forth, "the following orders are for the safety and welfare and in the best interest of [J.R.P.]." With its temporary orders, the trial court awarded J.P. primary conservatorship of J.R.P. and A.M. supervised possession. This order was signed by the parties on August 24, 2014.

On May 27, 2015, a three-nonconsecutive-day,[2] non-jury trial began with A.M. appearing *pro se.* The trial court took judicial notice of the First Amended Petition to Modify Parent-Child Relationship, which included a copy of A.M.'s drug test results that were positive for use of methamphetamine and marijuana. A.M. stated she wanted to object, but no proper objection was made, and there was no formal ruling from the trial court on any objection.

J.P. testified that he had suspicions A.M. was using drugs after they separated. The trial court also heard testimony from Jacqueline Weaver, an investigator with Children's Protective Services ("CPS"). Weaver testified she became familiar with A.M. as the alleged perpetrator in a report of abuse or neglect. Weaver stated that J.R.P. was at risk due to A.M.'s drug abuse. A.M. admitted during a CPS team meeting to drug use. A.M. refused to participate in a drug test requested and in services offered by CPS. Weaver further testified that A.M. expressed concerns about abuse in J.R.P.'s paternal grandparents' home; however, J.R.P. had made no outcry and the CPS recommendation was to get A.M. drug tested. A.M. admitted to using Xanax and Adderall, marijuana over Spring Break, and methamphetamines at the end of the prior year. Weaver further testified that A.M.'s mother shared her concerns about A.M.'s drug use. A.M.'s father discussed with Weaver that A.M. has emotional issues when J.R.P. visits for extended periods, concluding that is when she used drugs. Weaver further testified A.M. behaved strangely at their face-to-face meeting, crying, yelling, and leaving the room. Weaver acknowledged that A.M. told her that J.R.P. claims his paternal grandmother hurt him, but J.R.P. refuses to say how. Weaver also testified that J.P. had confessed to past drug use. When A.M. attempted to question Weaver regarding J.P.'s domestic violence, the court stated that Weaver had no information with regard to domestic violence. Weaver testified that CPS closed its investigation with a finding of "Reason to Believe" on A.M. because she admitted to drug use.

On May 29, 2015, with A.M. again appearing *pro se,* the trial continued with J.P. being recalled as a witness. J.P. testified that A.M.'s behavior had changed since the entry of the final judgment issued in December 2013. A.M. was impaired during possession periods; she was unstable, erratic, and sent emotional text messages and banter. J.P. further testified that this behavior concerned him about her care of their son.

J.P. testified that when J.R.P. was with him, J.R.P. was attending preschool and

---

**2.** Trial was not held on consecutive days. Rather, it was continued over the course of several days and months—May 27 and 29, 2015, and July 21, 2015.

doing well; he had his own room at J.P.'s house. J.P. testified he filed a complaint with CPS regarding A.M.'s drug use around April 2014. He said he had a great deal of indirect evidence or knowledge about A.M.'s drug abuse. J.P. testified that A.M.'s drug test showed an extreme amount of methamphetamine and a high level of marijuana in A.M.'s system. He further opined that even without these findings he would have continued the case for modification because A.M. was abusing prescription medication. A.M. acknowledged she had been arrested on this basis. A.M. attempted to enter evidence regarding frivolous pleadings, but the trial court sustained the objection to relevance lodged by counsel for J.P.

On July 21, 2015, trial continued with A.M. having retained counsel. A.M. called Bruce Jeffries, the owner of the drug screening company that tested A.M., to testify. Jeffries testified "he was told" that in a fingernail drug test Adderall, a medication prescribed to A.M., could cause a false positive for methamphetamine. J.P.'s counsel objected to this testimony, which was sustained by the trial court.

J.P. also underwent cross-examination, wherein he admitted to having pled guilty to assault. No details of the offense were allowed into evidence by the trial court, and J.P.'s objection was sustained as *res judicata*, as it had been considered prior to the agreed final decree in December 2013. J.P. further testified that a picture of A.M. drinking with J.R.P. was actually taken prior to the agreed final decree being entered in December 2013. J.P. conceded that he had never seen A.M. abstain from drugs for an extended period of time. He testified that A.M.'s mother found A.M. passed out with crystal methamphetamine and marijuana in her purse. J.P. testified that he thought A.M. had stopped using drugs when he signed the agreed final

decree in December 2013, as A.M. had passed a drug test in October 2013. J.P. later learned from an acquaintance that A.M. was using drugs again. J.P. testified that he wanted J.R.P. to be in a controlled, safe environment. According to J.P., his motion to modify was based on A.M.'s erratic behavior, refusal to participate in CPS's programs, and the positive drug test. A video was played before the trial court, demonstrating A.M.'s behavior that concerned J.P.

A.M. testified that she felt wrongfully accused of drug abuse and was shocked when the results came back. She stated CPS was prejudiced against her because of the false positive drug results. According to A.M., she quit taking all of her prescriptions, including Adderall. A.M. testified she lived with her parents and is on her parents' health insurance. She does not own a car. She has only worked for six months. A.M. testified she smoked marijuana in May 2014, and had smoked methamphetamine in the past.

On August 14, 2015, the trial court granted J.P.'s petition to modify. The trial court entered an order to modify parent-child relationship, appointing J.P. and A.M. as joint managing conservators with J.P. having the right to designate the primary residence of the child. A.M. was ordered to pay child support monthly to J.P. and his attorney's fees.

On September 10, 2015, A.M. filed a motion for new trial, challenging the judgment on three grounds: (1) it was legally insufficient because neither J.P.'s petition nor his affidavits provided the trial court with adequate facts to support an allegation the child's present environment may endanger J.R.P.'s physical health or significantly impair his emotional development; (2) there was insufficient evidence of a material and substantial change to the parent-child relationship; and (3) the court

erred by confining the issues to the pleadings on record. A.M.'s motion for new trial was denied.[3]

A.M. also requested findings of fact and conclusions of law, which the trial court entered on October 15, 2015. The trial court found, in relevant part, as follows:

### Findings of Fact

Respondent was not taking drugs at the time of the Final Order Adjudicating Parentage was entered on December 6, 2013, although Petitioner suspected she had been using previously.

Since the entry of the Final Orders on December 16, 2013, Respondent [A.M.], has been taking drugs, specifically, marijuana and methamphetamines.

Since the entry of the Final Orders on December 16, 2013, Respondent [A.M.], has exhibited erratic behavior and has been unstable emotionally.

Respondent's mother found Respondent passed out alone with the child.

At the time Respondent's mother found her passed out, her mother also found a bag of white substance in Respondent's purse, which was flushed down the toilet by Respondent's mother.

The Court previously determined at a hearing with both parties present that the affidavit attached to Petitioner's First Amended Motion to Modify adequately supported Petitioner's allegation that the child's present living environment might endanger the child's physical health or significantly impair the child's emotional development such that a hearing could take place on Temporary Orders.

It is in the best interest of the child that [J.P.] and [A.M.] be appointed Joint Managing Conservators of the child and [J.P.] have the exclusive right to determine the child's residence in Brazoria County and contiguous counties thereto.

### Conclusions of Law

This Court has jurisdiction of the parties and the subject matter of this case.

All legal prerequisites to bringing and granting modification have been met.

There has been a material and substantial change circumstances of the child or a party affected by the Final Orders.

[J.P.] and [A.M.] should be named Joint Managing Conservators of the child with the rights and duties stated in the judgment and [J.P.] should be named as the primary conservator with the exclusive right to designate the child's primary residence within Brazoria County and contiguous counties thereto, and to receive support.

[A.M.] is entitled to periods of possession with the child pursuant to a standard possession order and, if she elects, an extended standard possession order.

Respondent's periods of possession shall be unsupervised.

A.M. timely filed this appeal, setting forth five issues: (1) the trial court abused its discretion when it acted with no regard to the governing law by refusing to dismiss J.P.'s motion to modify after finding his supporting affidavit insufficient; (2) the trial court erred in ruling that the affidavit supporting the petition to modify was sufficient; (3) the trial court erred by granting the motion to modify when there was no material and substantial change; (4) the trial court erred by relying upon hearsay statements of an admitted perjurer to justify granting the petition to modify; and (5) the trial court erred by confining arguments to only pleadings.

---

**3.** A.M.'s motion for new trial was denied on June 11, 2016.

## II. Analysis

### A. Standard of review and applicable law

 Most orders arising from a suit affecting the parent-child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *In re C.A.M.M.*, 243 S.W.3d 211, 214 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Generally, a trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to any guiding rules or principles. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The failure to analyze or apply the law correctly also constitutes an abuse of discretion. *In re C.A.M.M.*, 243 S.W.3d at 215. The fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate an abuse of discretion. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re R.T.K.*, 324 S.W.3d at 900. In addition, a trial court is in the best position to observe the witnesses and their demeanor, and therefore is given great latitude in determining a child's best interests. *In re Guardianship of C.E.M.-K*, 341 S.W.3d 68, 80 (Tex. App.—San Antonio 2011, pet. denied).

 When the proper standard of review is abuse of discretion, challenges to the legal and factual sufficiency of the evidence are not independent grounds for reversal, but instead are factors to be considered in determining whether the trial court abused its discretion. *In re C.A.M.M.*, 243 S.W.3d at 220–21. To determine if the evidence is legally sufficient, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* In addition, we indulge every reasonable inference that would support the factfinder's finding. *In re Guardianship of C.E.M.-K*, 341 S.W.3d at 80. In a legal sufficiency review, the factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *In re Guardianship of C.E.M.-K*, 341 S.W.3d at 80.

 In reviewing factual sufficiency, we must examine the entire record, considering evidence both in favor of and contrary to the challenged findings. *In re Guardianship of C.E.M.-K*, 341 S.W.3d at 81. We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We cannot substitute our judgment for that of the factfinder. *Id.* If there is sufficient competent evidence to support the factfinder's decision, it must be upheld. *Id.* We may not weigh the witnesses' credibility or interfere with the factfinder's resolution of conflicts in the evidence. *In re C.A.M.M.*, 243 S.W.3d at 221.

After assessing the sufficiency of the evidence, we determine whether, based on the evidence, the trial court made a reasonable decision. We will affirm the decision unless it is arbitrary or unreasonable. *In re C.A.M.M.*, 243 S.W.3d at 221.

 Modification proceedings are governed by a statutory scheme distinct from the statutory scheme controlling original custody determinations. *See* Tex. Fam. Code § 156.101(a). Although the two types of custody proceedings are governed by distinct statutory schemes, both share

one overriding concern: the best interest of the child. *In re R.T.K.*, 324 S.W.3d at 900. A modification suit introduces additional policy concerns not present in an original custody action, such as stability for the child and the need to prevent constant litigation in child custody cases. *Id.* Thus, a person seeking to modify an existing custody order must prove that (1) a modification would be in the child's best interest, and (2) the circumstances of the child, a conservator, or other party affected by the custody order, have materially and substantially changed since the previous custody order. *Id.*

In a bench trial, as here, the trial judge is in the best position to observe and assess the witnesses' demeanor and credibility, to sense the forces, powers, and influences that may not be apparent from reading the record on appeal. *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.— Houston [14th Dist.] 2009, no pet.). As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute its judgment for that of the trial court. *Id.*

## B. Affidavit to support modification

 In A.M.'s first two issues, she contends the trial court abused its discretion (1) when the trial court refused to dismiss J.P.'s petition to modify after finding appellee's first supporting affidavit was found to be insufficient; and (2) when the trial court ruled that J.P.'s second affidavit supporting the petition to modify was sufficient.

Section 156.102 of the Family Code requires a person who files suit seeking to modify primary conservatorship within one year of the rendition of the order establishing primary conservatorship to file an affidavit setting forth certain allegations and supporting facts. *See* Tex. Fam. Code § 156.102(a). A petitioner is entitled to a hearing on his or her motion to modify if he or she swears to facts adequate to support a finding that the child's physical health may be endangered or his or her emotional development significantly impaired by the present environment. *See* Tex. Fam. Code § 156.102(b)(1); *Mobley v. Mobley*, 684 S.W.2d 226, 229 (Tex. App.— Fort Worth 1985, writ dism'd). If the trial court determines that the affidavit states facts adequate to support the allegations in the affidavit, the trial court must set a hearing on the modification issue. Tex. Fam. Code § 156.102(c).

If the affidavit is not filed or is insufficient, section 156.102(c) requires the trial court to deny the motion to modify and refuse to schedule a hearing on its merits. Tex. Fam. Code § 156.102(c); *see also In re A.S.M.*, 172 S.W.3d 710, 716 (Tex. App.—Fort Worth 2005, no pet.) (holding that trial court did not err when it refused to hear merits of matter and dismissed case due to absence of section 156.102 affidavit).

Here, the trial court did not abuse it discretion when it found J.P.'s first affidavit insufficient but did not grant A.M.'s motion to dismiss. The statute does not require dismissal. Rather, J.P. filed an amended petition and submitted an amended affidavit. The trial court commented during the hearing on July 15, 2014, that "the affidavit has to contain all of the proof necessary to show the change in custody or best interest. So, I think he gets to put on evidence with regard to best interest." The trial court observed, "[i]f we had to put all of that stuff in our pleadings, we would have pleadings that were very voluminous." J.P. attached to his second affidavit the drug test results reflecting A.M. had tested positive for using marijuana and methamphetamines. The trial court

does not have to make a specific finding on the record that the affidavit was sufficient to warrant a hearing; the fact that the court set the hearing was, itself, proof that it regarded a filed affidavit as adequate. *In re J.K.B.*, 750 S.W.2d 367 (Tex. App.— Beaumont 1988, no writ) (ruling under previous statute); *see also In re S.A.E.*, No. 06-08-00139-CV, 2009 WL 2060087, at *3 (Tex. App.—Texarkana July 17, 2009, no pet.) (mem. op.). Here, however, in the trial court's findings of fact and conclusions of law, the trial court expressly set forth its findings in this regard:

> The Court previously determined at a hearing with both parties present that the affidavit attached to Petitioner's First Amended Motion to Modify adequately supported Petitioner's allegation that the child's present living environment might endanger the child's physical health or significantly impair the child's emotional development such that a hearing could take place on Temporary Orders.

As such, the trial court did not abuse its discretion conducting a temporary hearing on the motion to modify. We overrule A.M.'s issues one and two.

## C. Material and substantial change

In her third issue, A.M. argues that the trial court erred by granting the first amended petition to modify when there was no material and substantial change.

We must first decide whether there was evidence demonstrating that the circumstances of the child, a conservator, or other party affected by the trial court's previous order had materially and substantially changed since the date of the previous order. Tex. Fam. Code § 156.101(a)(1). "In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to

rigid or definite guidelines." *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Instead, the court's determination is fact-specific and must be made according to the circumstances as they arise." *Id.* Changes in a child's home surroundings or circumstances rendering a conservator unsuitable are examples of the material and substantial changes contemplated by section 156.101(a)(1). *Id.*

Since the entry of the trial court's previous December 2013 order, A.M. tested positive for using drugs. Also, A.M. refused to participate in CPS services or drug testing. A.M. admitted to using drugs. Testimony from J.P. and Weaver revealed A.M.'s behavior was erratic. To the extent A.M. argues that she was unstable and had a drug habit prior to the agreed final order in December 2013 and her use of drugs after that order was a continuation of established behavior, the trial court could have rejected this argument based on J.P.'s testimony that she had passed a drug test prior to the final order and he thought she had stopped using drugs. We conclude that these facts were sufficient for the court to find a material and substantial change in the parties' circumstances. *In re Vogel*, 261 S.W.3d 917, 924 (Tex. App.—Houston [14th Dist.], 2008, orig. proceeding) ("trial court did not abuse its discretion in denying sole managing conservatorship to a parent with alcohol problems"). A.M.'s third issue is overruled.

## D. Hearsay

In her fourth issue, A.M. asserts the trial court erred "by relying upon hearsay statements of an admitted perjurer [J.P.] to justify granting the petition to modify." A.M. asserts that J. P. is an admitted perjurer and she is a victim of J.P.'s domestic violence against her.

■ Contrary to A.M.'s contention and as reflected in the trial court's findings of fact and conclusions of law, there was more than sufficient, nonhearsay evidence from which the trial court could have reached its judgment. The record reflects that the trial court heard testimony over the course of three days. The evidence of record reveals A.M. testing positive for marijuana and methamphetamines. Weaver testified A.M. refused to participate in CPS services or drug testing. Weaver observed A.M.'s erratic behavior. A.M. admitted to the CPS team she used drugs. CPS closed its case with a finding of Reason to Believe against A.M. due to A.M.'s drug use. J.P.'s observed first-hand A.M.'s unusual behavior. In a nonjury trial, such as here, the trial judge is in the best position to assess the witnesses' demeanor and credibility, and we will defer to the trial court's resolution of underlying facts and to credibility determinations. *In re A.L.E.*, 279 S.W.3d at 427. To the extent A.M. points to evidence she believes is contrary to the trial court's decision in this matter, we again point out that in a bench trial, the court is the trier of fact and we may not re-evaluate the witnesses' credibility or reweigh their testimony. A trial court does not abuse its discretion when, as here, there is some evidence of a substantive and probative character to support its decision. *In re R. T.K.*, 324 S.W.3d at 900. A.M.'s fourth issue is overruled.

## E. Limiting record to the pleadings

■ In her fifth issue, A.M. maintains the trial court erred by refusing to allow her to "cross-examine [J.P.] on the issue of [J.P.] abusing the judicial process and also failing to provide medical insurance for the child." A.M. further contends the trial court erred by "refusing to hear evidence regarding [J.P.'s] history of domestic violence."

To preserve error in the exclusion of evidence, a party must (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if an objection is lodged, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible, make a record of the evidence the party desires admitted. *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 629–30 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see also* Tex. R. App. P. 33.1(a)(1)(A). Thus, to challenge the exclusion of evidence by the trial court on appeal, the complaining party must preserve the evidence in the record. *See* Tex. R. Evid. 103(a), (b).

Here, the issue of whether the trial court correctly ruled on the admissibility of evidence is not properly before us because A.M. did not make an offer of proof describing the evidence she would have sought to introduce had the trial court not allegedly prevented her from presenting such evidence at trial. The substance of this evidence is not apparent from the context, as the testimony is conflicting. Therefore A.M. did not preserve the issue for our review. *See Becker-White v. Goodrum*, 472 S.W.3d 337, 340 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

■ "When no offer of proof is made before the trial court, the party must introduce the excluded testimony into the record by a formal bill of exception." *Industrial III, Inc. v. Burns*, No. 14-1300386, 2014 WL 4202495, at *6 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, pet. denied) (mem. op.) (citing *In re Estate of Miller*, 243 S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.)). Failure to demonstrate the substance of the excluded evidence results in waiver. *Id. (Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—

Dallas 2008, no pet.); *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 493 (Tex. App.—Fort Worth 1999, pet. denied)). A.M.'s post-trial filings did not argue the requisite elements to present a formal bill of exceptions. *See* Tex. R. App. P. 33.2(c). In the absence of a bill of exceptions or offer of proof, this court has no basis for reviewing a contention that the trial court committed reversible error in excluding evidence. *See Carlile v. RLS Legal Solutions, Inc.*, 138 S.W.3d 403, 411 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A.M.'s fifth issue is overruled.

### III. Conclusion

Having overruled all of A.M.'s appellate issues, we affirm the trial court's order.