# NO. 12-21-00068-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF I.G.,* | § | *APPEAL FROM THE 321ST* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
|  | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Pro se Appellant M.G., the mother of the minor child I.G., challenges the trial court's final order in a suit affecting the parent-child relationship. In five issues, M.G. argues that the trial court abused its discretion by ordering I.G.'s emergency removal, failing to immediately return I.G. to her, maintaining the case on its docket without jurisdiction, "using a disposed case to issue current orders[,]" and failing to hold a hearing to determine whether it had jurisdiction. We affirm the trial court's judgment.

## BACKGROUND

On September 10, 2019, the Department of Protective and Regulatory Services filed a petition for orders in aid of investigation, asserting that it received a report of abuse and/or neglect of I.G., in which the Department alleged that "there is probable cause to expeditiously conduct an investigation to ensure the safety and welfare of the child and to request that the Court authorize the Department to proceed with the investigation, interview, and/or examination as requested herein." According to the Department's petition, the Department had not been able to obtain the consent necessary to complete a thorough investigation, and the Department requested an ex parte order. Attached to the Department's petition was an affidavit by caseworker Kathryn Deshotel, in which Deshotel averred that "[t]he intake alleged that the mother was allowing 'addicts' in her home where methamphetamine is being used in the presence of the [five] year old." Deshotel's affidavit also stated, "[i]t was additionally alleged that . . . there was a history of domestic violence

between the mother and father." According to the kinship caregiver home assessment, the Department received a second report, which asserted that M.G. tested positive for amphetamine and methamphetamine and I.G. was continuously late for school.

On September 27, 2019, the Department filed an original petition for protection of a child, for conservatorship, and for termination. In its petition, the Department pleaded that because I.G. was in immediate danger or had been the victim of neglect or abuse, continuing in the home would be contrary to her welfare, and the Department requested that it be appointed I.G.'s temporary sole managing conservator without notice or an adversary hearing. Attached to the Department's petition was an affidavit from Deshotel, who averred, among other things, that M.G. "was positive for methamphetamine via hair strand drug testing[,]" and M.G. (1) has a history of substance abuse, (2) a previous removal, (3) was uncooperative with the Department during the investigation, and (4) "has a history of being uncooperative with the Department[.]" Deshotel stated in the affidavit that I.G. "is only five years old and therefore unable to self-protect or provide for her own basic needs." According to Deshotel's affidavit, on July 31, 2019, the Department received an intake alleging neglectful supervision and physical neglect of I.G. Specifically, the intake alleged that M.G. was allowing addicts in her home and methamphetamine was being used in I.G.'s presence.

The trial judge rendered an order for protection of a child in an emergency, in which it found that there was an immediate danger to I.G.'s physical health or safety and continuing in the home would be contrary to her welfare. The order appointed the Department as I.G.'s temporary sole managing conservator. In addition, the trial judge signed an order for issuance of a writ of attachment with respect to I.G. The Department initially placed I.G. with her maternal aunt and uncle, and the Department subsequently placed I.G. with her adult sister, C.F. At a hearing conducted on August 25, 2020, counsel for the Department stated that the parties participated in a settlement conference and reached a Rule 11 agreement that outlined the services M.G. needed to complete. The Department's counsel also stated, "one thing that has been agreed to by all parties is that we're going to need an extraordinary circumstances extension on this case due to COVID, and to give [M.G.] enough time to complete the services so she can achieve family reunification." M.G.'s counsel stated, "[w]e're in agreement with that extension."

On September 2, the trial judge signed an order retaining the case on the court's docket, in which he found that extraordinary circumstances necessitated I.G. remaining in the temporary managing conservatorship of the Department, and the judge scheduled a final hearing for February

23, 2021, and ordered that the suit would be automatically dismissed on March 27, 2021. The trial court conducted a permanency hearing on September 3, 2020, at which M.G. indicated that she objected to the Rule 11 agreement.

The parties subsequently attended mediation, and on February 22, 2021, the parties entered into an irrevocable mediated settlement agreement (MSA), which provided that C.F. would be allowed a reasonable time to complete the Fostering Connections program, and the Department would be I.G.'s managing conservator while C.F. was enrolled in the program. Under the terms of the MSA, upon C.F.'s successful completion of the program, C.F. would be appointed sole managing conservator of I.G., and M.G. would be appointed possessory conservator. The MSA also provided that the Department's claim for termination of M.G.'s parental rights would be denied. At the final hearing on February 23, the trial judge approved the MSA, found that the MSA is in I.G.'s best interest, and stated that he would "approve all the terms [of the MSA] and make it an order of the Court and enter judgment thereon," including naming the Department permanent managing conservator while C.F. completes the Fostering Connections program.

On April 29, the trial judge signed a final order, in which he found that M.G. freely and voluntarily signed the MSA, concluded that there was no evidence of fraud, duress, or coercion, and overruled M.G.'s objection to the MSA. In the final order, the trial judge appointed the Department as I.G.'s permanent managing conservator and found that "the Department shall continue as permanent managing conservator of the subject child until [C.F.] has a reasonable period of time to complete the Fostering Connections program[.]" The final order further provided that when C.F. completes the Fostering Connections program, the Department will seek to transfer managing conservatorship to C.F. The trial judge appointed M.G. possessory conservator of I.G., found that such appointment is in I.G.'s best interest, and set a visitation schedule for M.G.[1] This appeal followed.

## EMERGENCY ORDER REMOVING THE CHILD

In issue one, M.G. argues that the trial court lacked jurisdiction to issue a writ of attachment for the emergency removal of I.G., and in issue four, M.G. contends that the trial court abused its discretion by "utilizing a disposed case to issue current orders[.]" M.G.'s brief does not precisely

---

[1] In a separate order, the trial judge overruled M.G.'s sixteen pending motions.

address or explain her argument with respect to issue four. We construe issues one and four as challenging the trial court's emergency order removing I.G.; therefore, we address those issues together.

**Applicable Law**

We review most orders arising from a suit affecting the parent-child relationship for an abuse of discretion. *In re J.R.P.,* 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.; see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial court may decide a matter within its discretion differently than an appellate court would in a similar circumstance does not demonstrate an abuse of discretion. *In re J.R.P.*, 526 S.W.3d at 777. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *Id*. Because a trial court is in the best position to observe the witnesses and their demeanor, we give the trial court great latitude in determining a child's best interests. *Id*. "[I]t is well-settled that a temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order." *In re B.M.*, No. 12-18-00094-CV, 2018 WL 4767179, at *2 (Tex. App.—Tyler Oct. 3, 2018, no pet.) (mem. op.); *see In re T.D.M.C.*, No. 12-02-00218-CV, 2003 WL 22455758, at *2 (Tex. App.—Tyler Oct. 29, 2003, no pet.) (mem. op.).

**Analysis**

The trial court's emergency order removing I.G. from the home was a temporary order. *See* TEX. FAM. CODE ANN. § 262.102 (West Supp. 2021).[2] Because a final order has been entered in the proceeding, M.G.'s arguments regarding the emergency removal order and writ of attachment issued pursuant thereto are moot. *See In re B.M.*, 2018 WL 4767179, at *2; *In re T.D.M.C.*, 2003 WL 22455758, at *2. Accordingly, we overrule issues one and four.

### GRANTING OF EXTENSION

In issue two, M.G. contends the trial court abused its discretion by failing to return the child to her after the one-year statutory deadline passed. In issue three, M.G. contends the trial

---

[2] Because the 2021 amendments to Section 262.102 do not materially affect the outcome of this appeal, we cite to the current version of the statute.

court abused its discretion by maintaining the case on its docket after the one-year statutory deadline. We address issues two and three together.

## Applicable Law

A trial court automatically loses jurisdiction over a suit requesting to be named a child's conservator "on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator" unless the court has commenced a trial on the merits or granted an extension. TEX. FAM. CODE ANN. § 263.401(a), (b) (West Supp. 2021).[3] The statute provides that the trial court may grant an extension of up to 180 days past the one-year anniversary if the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing the Department's appointment as temporary managing conservator is in the child's best interest. *Id*. § 263.401(b).

## Analysis

The trial court rendered an order appointing the Department temporary managing conservator of I.G. on September 27, 2019. The first Monday after the first anniversary of that date was September 28, 2020. The trial court would have automatically lost jurisdiction on September 28, 2020, if it had not either commenced a trial on the merits or granted an extension of time after finding that extraordinary circumstances existed. However, on September 2, 2020, the trial court found that extraordinary circumstances existed and granted an extension of the automatic dismissal date until March 27, 2021 (180 days from September 28, 2020). *See id*. § 263.401(a), (b). As discussed above, the trial court conducted a trial on the merits on February 23, 2021.

Before granting an extension of the automatic dismissal date, the trial court heard counsel for the Department state on the record that the Department needed an extension of the statutory dismissal date due to the pandemic and to allow M.G. adequate time to complete the required services, and M.G.'s counsel agreed. M.G. has not demonstrated that the trial court acted arbitrarily or unreasonably, without reference to any guiding principles, in concluding that extraordinary circumstances exist that necessitate I.G. remaining in the temporary managing conservatorship of the Department and that continuing the Department's appointment as temporary

---

[3] Because the 2021 amendments to Section 263.401 do not materially affect the pertinent subsections of the statute or the outcome of this appeal, we cite to the current version of the statute.

managing conservator is in I.G.'s best interest.  *See id.* § 263.401(b); ***In re J.R.P.,*** 526 S.W.3d at 777; *see also **Downer***, 701 S.W.2d at 241-42.  Accordingly, we overrule issues two and three.

<u>**FAILURE TO HOLD A HEARING**</u>

In issue five, M.G. argues that the trial court abused its discretion by failing to hold a hearing on the merits to determine whether it had jurisdiction.

<u>**Applicable Law**</u>

An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.  TEX. R. APP. P. 38.1(i).  Although we are to liberally construe pro se briefs, pro se litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure; otherwise, pro se litigants would have an unfair advantage over parties represented by counsel.  ***Muhammed v. Plains Pipeline, L.P.***, No. 12-16-00189-CV, 2017 WL 2665180, at *2 n.3 (Tex. App.—Tyler June 21, 2017, no pet.) (mem. op.); ***Giddens v. Brooks***, 92 S.W.3d 878, 880-81 (Tex. App.—Beaumont 2002, pet. denied).  Specifically, pro se litigants must comply with the rule requiring adequate briefing and citations to the record.  ***Redmond v. Kovar***, No. 09-17-00099-CV, 2018 WL 651272, at *2 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.).  Bare assertions of error, without argument or authority, waive error and present nothing for review on appeal.  ***McKellar v. Cervantes***, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.); ***Washington v. Bank of N.Y.***, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.).  The appellate court has no duty to brief issues for an appellant, and if we were to do so, "we would be abandoning our role as neutral adjudicators and become an advocate for that party." ***In re A.E.,*** 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied).

<u>**Analysis**</u>

In her statement of issues, M.G. argues in issue five that the trial court abused its discretion by failing to hold a hearing on the merits to determine whether it had jurisdiction.  M.G.'s brief does not contain argument or supporting authorities for her contention, and the body of M.G.'s brief never mentions or discusses the lack of a hearing after the statement of her issues.  We have no duty to brief issues on M.G.'s behalf.  *See id*.  We conclude that M.G.'s bare statement of issue five, unsupported by any argument or supporting authorities, is inadequately briefed and therefore waived.  *See* TEX. R. APP. P. 38.1(i); ***Muhammed***, 2017 WL 2665180, at *2 n.3; ***Redmond***, 2018

6

WL 651272, at *2; *McKellar*, 367 S.W.3d at 484 n.5; *Washington*, 362 S.W.3d at 854; *Giddens*, 92 S.W.3d at 880-81.  We overrule issue five.


## DISPOSITION

Having overruled each of M.G.'s five issues, we *affirm* the trial court's judgment.


GREG NEELEY
Justice


Opinion delivered January 19, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 19, 2022**

**NO. 12-21-00068-CV**

**IN THE INTEREST OF I.G., A CHILD**

Appeal from the 321st District Court
of Smith County, Texas (Tr.Ct.No. 19-2400-D)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*