# Court of Appeals
## Tenth Appellate District of Texas

---

10-24-00156-CV

---

Melissa Lynn Priddy,
Appellant

v.

Rob Alan Priddy,
Appellee

---

On appeal from the
County Court at Law of Walker County, Texas
Hon. Tracy M. Sorensen, presiding
Trial Court Cause No. D2319263

---

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Melissa Lynn Priddy appeals from an agreed final decree of divorce that dissolved her marriage to Rob Alan Priddy. The decree incorporated a mediated settlement agreement. In her sole issue, Melissa asserts the trial court erred in denying her motion to set aside the mediated settlement agreement. We affirm.

## BACKGROUND

After more than twenty years of marriage, Melissa filed for divorce, and Rob filed a counter petition. The parties attended mediation and signed a mediated settlement agreement which included the division of their marital estate. Of significance to this dispute, Rob was awarded one hundred percent of his 401k account. Additionally, the agreement included the following statement:

> Wife acknowledges that Husband is not a co-maker of the purported Promissory Note dated February 10, 2023 and that any liability under that document shall be her sole and separate obligation. Wife shall indemnify and hold Husband and his property harmless from the failure to satisfy such Promissory Note.

Melissa obtained new counsel and filed a motion to set aside the mediated settlement agreement, asserting that she was threatened and forced to sign the agreement. Specifically, she claimed Rob threatened to file criminal charges against her if she did not sign. The trial court held a hearing and denied the motion. This appeal followed.

## MEDIATED SETTLEMENT AGREEMENT

In her sole issue, Melissa asserts she signed the mediated settlement agreement under duress. Therefore, she argues, the trial court abused its discretion by denying her motion to set it aside.

**Standard of Review**

We review a trial court's decision not to set aside a mediated settlement agreement for an abuse of discretion. *See In re C.H.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). The trial judge is best positioned to assess the witnesses' demeanor and gauge credibility, and we defer to the trial court's resolution of conflicts in the evidence. *In re J.R.P.*, 526 S.W.3d 770, 780 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court does not abuse its discretion if there is some substantive, probative evidence to support the decision. *Granger v. Granger*, 236 S.W.3d 852, 855-56 (Tex. App.—Tyler 2007, pet. denied).

**Applicable Law**

A mediated settlement agreement is binding on the parties if the agreement meets certain statutory requirements. TEX. FAM. CODE ANN. § 6.602(b). However, a court is not required to enforce a mediated settlement agreement if it is illegal in nature or procured by fraud, duress, coercion, or other dishonest means. *Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.); *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.).

A common element of duress in all its forms is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment. *Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878-79 (Tex. 2005). The threat of criminal prosecution to pressure someone to execute a contract is itself a wrongful use of the criminal justice process that may constitute duress sufficient to void the resulting agreement. *Weinberg v. Baharav*, 553 S.W.3d 131, 135 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A claim of duress must be established based on the conduct of the party accused of causing duress, not the emotions of the purported victim. *Id.* at 134. The threat must be actual and imminent, not merely feigned or imagined. *Dallas Cty. Cmty. Coll. Dist.*, 185 S.W.3d at 879.

**Analysis**

About a month before she filed for divorce, Melissa signed a promissory note in the amount of $585,125.30, payable to P.P.D Holdings, Ltd. She signed both her name and Rob's name without his knowledge. The note was meant to cover a long list of improvements made to property owned by Melissa's mother, where Melissa and Rob lived during the marriage. The expenses were incurred between 2021 and 2023.

At the hearing on the motion to set aside the mediated settlement agreement, Melissa explained that the mediator spoke separately with Rob and his attorney and then returned to Melissa and her attorney. According to Melissa, the mediator was in "panic mode" and told her "the 401k is off the table." Further, Melissa testified that the mediator said that if Melissa did not agree to forfeit her rights to the 401k, Melissa would "be convicted of criminal charges, of fraud, because [she] signed [her] husband's name on this promissory note." Melissa further testified that her attorney told her she did not have any other choice, unless she wanted "criminal charges put on [her]."

Melissa introduced copies of text messages between her and Rob, sent about a month after mediation. In a conversation regarding their financial matters, Melissa asserted that she had been blackmailed with criminal fraud charges at mediation. Rob replied that he is not blackmailing or accusing her of anything. When Melissa stated that the mediator was scared and relayed messages from Rob and his attorney about what they were going to do to her, Rob replied, "Not true Melissa she is an attorney as well and knows the law." Melissa replied by stating she "shook & cried for 2 days & nights." Rob said he is not arguing with her. Melissa replied, "You were going to charge me with criminal charges." Rob replied, "I'm sorry you feel this way but that's not how

it went down nor works[.]  No I was not, i told them I would not put my kids mother in jail."

Melissa testified that the text messages show there was a conversation about putting her in jail.  She also testified that she was pretty upset, scared, and under duress.  She stated that she would not have entered into the agreement if she had not been threatened with jail time.

Brooke Priddy, the parties' daughter, testified that Melissa's attorney said she needed to sign the agreement or there would be criminal charges.  She testified that Melissa was very upset, on edge, distressed, and panicking that she would be charged, even though she agreed to forfeit the 401k.

Rob testified that the first time he saw the note was at mediation.  He said it is possible he had a conversation with his attorney about filing charges against Melissa, but he did not recall mentioning that in front of the mediator.  He denied threatening to send Melissa to jail and said he never heard the mediator say that he threatened to send her to jail.  The first time he heard this accusation was in the text message.

Sarah Hebert, the attorney who represented Melissa at mediation, explained that, after speaking with Rob and his attorney, the mediator said they had never seen the note before, and Rob did not sign it.  Hebert testified that the mediator never said anything about criminal charges.  She specifically

denied that the mediator said Melissa must sign the agreement or she will be convicted, or that Rob was going to send her to jail or get her charged or convicted, or that the mediator had talked with them about having her charged. Hebert testified that she was concerned that her client had lied to her about signing her husband's signature on the note. But while she advised Melissa that fraud and forgery were committed and criminal charges "could possibly come up," she never said she was pressing criminal charges. Melissa's current counsel asked, "When she pointed out the line about duress to you, did that happen?" Hebert replied, "That did not happen." Further, Hebert disagreed with Brooke's description of Melissa's demeanor at mediation. Hebert described it as "hanging out, talking," and "[t]here was a lot of laughing, giggling, joking."

Melissa's and Brooke's testimony, while aligned with each other, was at odds with Rob's and Hebert's testimony. The trial court was entitled to determine credibility and determined Rob and Hebert provided more credible testimony. *See In re J.R.P.*, 526 S.W.3d at 780. We defer to the trial court's resolution of conflicts in the evidence. *Id.* Their testimony denying any threats of criminal prosecution in exchange for Melissa's signature on the agreement constitutes some substantive, probative evidence supporting the trial court's denial of the motion to set aside the mediated settlement agreement. *See*

*Weinberg*, 553 S.W.3d at 135; *In re J.R.P.*, 526 S.W.3d at 780; *Granger*, 236 S.W.3d at 855-56. Because the trial court did not abuse its discretion in denying the motion, we overrule Melissa's sole issue.

## CONCLUSION

Having overruled Melissa's sole issue, we affirm the trial court's judgment.

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED: May 8, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
CV06

