

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00767-CV

**IN THE INTEREST OF M.O.S.**, a Child

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2019EM502105
Honorable Nadine Melissa Nieto, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: February 4, 2026

AFFIRMED

In this six-year custody dispute, appellant Mother contends the trial court erred by entering a signed final order modifying her parent-child relationship with M.O.S.[1] Specifically, she asserts the trial court denied her due process by failing to permit her to present evidence of what had occurred between the trial court's oral ruling after the December 2023 final trial and its October 2024 written and signed final order.

---

[1] To protect the identity of the child, we refer to the child by his initials and the parents by either "Mother" or "Father." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

**BACKGROUND**

Originally, both parents were named joint managing conservators in April 2019, with mother having the right to determine the child's primary residence without regard to geographic location and father having a standard possession order. The following year, Father filed a motion to modify and enforce the possession and access order. More than a year later, Mother filed a counterpetition to modify suit affecting the parent-child relationship, seeking, among other things, child support arrearages and a finding of contempt. From then to early 2023, the parties moved for, and the court signed, a series of temporary orders relating to possession and access, specifically requiring Mother to communicate with Father about M.O.S. and to relocate the child to Bexar County.

In October 2023, the trial court entered a temporary order finding there was credible evidence of a history of parental alienation by Mother that endangered the child's physical health and emotional welfare. The court further found it was not in M.O.S.'s best interest for Mother to have unsupervised possession and access to M.O.S. or for the parents to remain joint managing conservators. As a result, the court appointed Father as sole managing conservator and Mother as possessory conservator. Still, Mother refused to comply with the court's orders, and Father moved for, and received, an order forcing Mother to turn M.O.S. over to him.

On December 14, 2023, the trial court held a final hearing to consider evidence and enter a final modification order.[2] At the end of the December 2023 hearing, the trial court stated that it would make the prior temporary orders final but would hold a status conference three months later.

Nearly ten months came and went, and, in October 2024, the trial court finally held a hearing on Father's motion to enter a final order. Mother objected that no status conference had

---

[2] At the hearing, the trial court took judicial notice of all the pleadings and prior testimony in the case.

taken place and sought to enter evidence of incidents which had occurred since the final hearing. Instead of hearing additional evidence, the trial court simply entered a written final order based on its prior temporary orders and, again, set forth a required status hearing.

## A. Standard of Review and Applicable Law

We review a trial court's modification order determining the best interest of the child and conservatorship, possession, and access for an abuse of discretion. *See, e.g.*, *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* This includes when it is alleged that the court acted to deny the constitutional protections of due process. *Elm Creek Owners Ass'n v. H.O.K. Investments, Inc.*, 12 S.W.3d 495, 497 (Tex. App.—San Antonio 1999, no pet.).

## B. Mother's Argument

Here Mother argues the trial court violated her due process rights by failing to consider evidence of the child's circumstances between the December 2023 oral ruling and the entry of a written final order in October 2024. *See, e.g.*, *B.B. v. A.C.B.*, 693 S.W.3d 501, 508 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("Parents hold a 'fundamental liberty interest' in the care as well as the custody and management of their children" (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000))); *Bates v. Tesar*, 81 S.W.3d 411, 435–36 (Tex. App.—El Paso 2002, no pet.) ("The United States Supreme Court has recognized that parents have a liberty interest in the care, custody, and control of their children. These parental interests are a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (citation omitted)). In reviewing her appeal, we not only look to the impact of such refusal on the

final order that was ultimately entered in this matter but also to the potentially preclusive effect such refusal may have on Mother's ability to address the child's best interest in the future.

Specifically, a parent is generally precluded from presenting evidence in support of a later modification petition if such evidence existed prior to the last final custody order.[3] *See In re B.L.J.P.*, No. 04-14-00015-CV, 2014 WL 5020121, at *2 (Tex. App.—San Antonio Oct. 8, 2014, no pet.) (mem. op.); *J.C.C. v. Tex. Dep't of Family & Protective Services*, No. 03-13-00845-CV, 2014 WL 2740373, at *4 (Tex. App.—Austin June 13, 2014, no pet.) (mem. op.). Only in limited circumstances can a later court go "behind the curtain" of a prior final order, such as when the sole purpose of the evidence is to corroborate similar conduct that is alleged to have occurred since that order. *See J.C.C.*, 2014 WL 2740373, at *4. Thus, we must determine whether the trial court, by refusing to consider evidence that arose after the December 2023 hearing but before the October 2024 final order, effectively precluded Mother from *ever* being able to have a court consider the evidence of matters that occurred in that ten-month period of time.

Mother's point of error, therefore, turns at least partially on *when* the trial court rendered its final order. *See* TEX. FAM. CODE § 156.101(a)(1)(A) (stating that to modify custody determination, movant must show material change in child's circumstances "*since the date of the order's rendition*" (emphasis added)). If the trial court's final order was rendered in October 2024, when the written order was finally entered, the trial court's refusal to consider such evidence could, with the exceptions noted above, forever preclude Mother from presenting such evidence for

---

[3] Under the Texas Family Code, a trial court may modify conservatorship, possession, and access if (1) the modification would be in the best interest of the child and (2) the child or the conservator's circumstances have materially and substantially changed *since the date of the order's rendition*. TEX. FAM. CODE § 156.101. To prove a material and substantial change of circumstances has occurred since the rendition of the last final order determining custody, possession, and access, a movant must show the conditions as they existed at the time the prior final order was signed and how those conditions have changed since the prior final order. *See In re T.W.E.*, 217 S.W.3d 557, 559–60 (Tex. App.—San Antonio 2006, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 594 n.1 (Tex. App.-Austin 2006, pet. denied) (providing record must reflect both historical and current evidence of relevant circumstances for change).

judicial scrutiny in support of a future motion to modify. But, if the trial court rendered its ruling when it orally pronounced it in December 2023 and later simply ministerially entered the written order, no due process consideration would be warranted.

## C. When Did the Trial Court Render Its Order?

Rendition is the critical moment when a judgment becomes effective. *Araujo v. Araujo*, 493 S.W.3d 232, 235 (Tex. App.—San Antonio 2016, no pet.). Under the Texas Family Code, "render" means a judge's pronouncement of the court's ruling, which may be made orally or in writing. TEX. FAM. CODE § 101.026. The Texas Supreme Court has explained that rendition of judgment is a "present" judicial act that demonstrates an intent to "decide[] the issues on which the ruling is made." *Baker v. Bizzle*, 687 S.W.3d 285, 292 (Tex. 2024). It can be an oral pronouncement made publicly in open court as long as the oral pronouncement clearly indicates it is a full, final, and complete judgment that resolves all issues. *See id.* at 292–93; *S&A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam).

At the December 2023 hearing, the trial court stated:

> So what I'm going to do is this: We're going to go ahead and keep the standing orders. . . . But I will do this, and I generally don't do this when it's a final order. . . . I would like to see you back. . . . I want to know how things are going. . . . I want to see how he continues to adjust at this new school, and if changes need to be made.

The amicus attorney then asked the trial court whether it wanted a status conference, and the court stated "Yes, I do. . . . I want a status conference. I'm thinking three months."

The trial court, by maintaining the "standing orders," by ordering a status conference to determine "if changes need to be made," and by noting she was departing from her usual practice in rendering final orders, demonstrated that even the judge questioned whether the December 2023 ruling would be the final one. *See Baker*, 687 S.W.3d at 292. As such, we hold the oral ruling made

in December 2023 does not constitute the rendition of a final judgment but instead demonstrates that the court's determination will be ongoing.[4]

Thus, the question becomes whether the trial court violated Mother's due process rights when it failed to consider evidence of incidents which allegedly occurred in those ten months before entering a final order.

### D. Did the Trial Court Violate Mother's Due Process Rights?[5]

Due process fundamentally requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *In re J.R.*, 652 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). The Texas Supreme Court has adopted the *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test to determine whether a party's due process rights are violated. *See J.R.*, 652 S.W.3d at 514. The test balances three factors: (1) the party's private interest affected; (2) the risk that interest is deprived in error through the procedures used and the probable value, if any, of additional or alternative procedural safeguards; and (3) the government's interests, including the function involved and the fiscal and administrative costs that the additional or substitute procedural requirements would entail. *See id.* (citing *Mathews*, 424 U.S. at 335). The

---

[4]We note the trial court also set out the requirement of a status hearing in the written final order. We do not have before us the issue of whether a trial court can order a status hearing to be held after plenary jurisdiction expires but do note our sister court's decision in *In re Marriage of Cobb*, 2024 WL 3448486, at *2 (Tex. App.—Amarillo July 17, 2024, no pet.) (mem. op.) (holding trial court had no plenary power to modify custody after rendering final order).

[5] As an initial matter, we must determine whether Mother preserved this issue for our review. While Mother did urge the trial court to hear her evidence, she did not make a formal offer of proof or file a bill of exception. *See* TEX. R. APP. P. 33.1 and 33.2; TEX. R. EVID. 103. *See In re J.R.P.*, 526 S.W.3d 770, 780 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re A.E.A.*, 406 S.W.3d 404, 420 (Tex. App.—Fort Worth 2013, no pet.). Under Rule 103, a party may claim error in the exclusion of evidence if the error affects a substantial right of the party and if the party informs the court of its substance by an offer of proof, unless the substance was apparent from the context. TEX. R. EVID. 103(a)(2). It is clear a substantial right is affected given this case relates to Mother's rights of possession and custody of her child. *In re Marriage of Harrison*, 557 S.W.3d 99, 123 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (providing substantial rights affected because ruling pertained to rights of possession and custody of children). Further, the substance of the excluded evidence was apparent from the record, as detailed below in our harm analysis. *See* TEX. R. EVID. 103(a)(2); *J.R.P.*, 526 S.W.3d at 780. Thus, we hold Mother preserved her complaint for review. *See* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.2; *J.R.P.*, 526 S.W.3d at 780; *see also Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022); *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 706 (Tex. 2021).

inquiry is flexible, bending toward the procedural protections demanded by the particular situation. *See id.*

As noted above, the private interest here, Mother's conservatorship and rights of possession and access to M.O.S. is a paramount liberty interest. *See Troxel*, 530 U.S. at 65; *B.B.*, 693 S.W.3d at 508; *Bates*, 81 S.W.3d at 435. Accordingly, the private interest in the parent-child relationship is considerable and weighs in favor of finding a due process violation. *See J.R.*, 652 S.W.3d at 514.

In considering the second and third prongs together, we must consider the potential for the erroneous deprivation of Mother's private interest against the trial court's interest in ensuring an expeditious yet accurate resolution to protect the child's welfare as well as its inherent power to control the disposition of the cases on its docket with economy of time and effort for all involved. *See A.E.A.*, 406 S.W.3d at 419–20. But, we are mindful that of paramount concern in a case involving the modification of child custody is the best interest of the child. *See* TEX. FAM. CODE § 156.101.

Mother asserts that she attempted to present evidence that would go directly to the best interests of the child and which had come into existence since the last hearing. Further, Mother was seeking to have the court consider evidence that it had explicitly stated it wanted in a status hearing that was never held—quite precisely, to determine "if changes need to be made." Moreover, by refusing to consider the evidence that had occurred in that ten-month window, and entering a final order, the trial court took action that could forever preclude such evidence from seeing the light of day in a future proceeding. *See J.C.C.*, 2014 WL 2740373, at *4.

It is understandable that a trial court desires to keep things moving, particularly in such a contentious case. But, the risk of insulating evidence that could demonstrate to the court that the

order about to be entered is no longer in the child's best interest, particularly after a ten-month delay during which even the trial court had recognized a need for further monitoring, is significant. Accordingly, both the second and third prongs also weigh in favor of finding a violation of Mother's due process rights. *See J.R.*, 652 S.W.3d at 514.

### E. Did the Exclusion of the Evidence Probably Cause the Rendition of an Improper Judgment?

But, we will not reverse the trial court's decision unless Mother has shown the trial court's error probably caused the rendition of an improper judgment. *See* TEX R. APP. P. 44.1; *Brown v. Freed*, No. 03-21-00556-CV, 2023 WL 9007331, at *8 (Tex. App.—Austin Dec. 29, 2023, pet. denied) (mem. op.). This usually requires a showing that the judgment turns on the particularly excluded evidence, meaning the evidence is not cumulative on a dispositive issue. *See In re A.M.*, 418 S.W.3d 830, 837 (Tex. App.—Dallas 2013, no pet.).

In detailing the kind of evidence she intended to present, Mother explained that Father kept information from her about M.O.S. and that M.O.S. had missed twenty-one days of school during the previous school year. She sought to introduce evidence of bruises on the child's arms, that the child was left unsupervised in Father's vehicle, that he did not have his own room, and that the child was not sleeping or eating well. Further, she sought to prove that Father was not providing M.O.S. with health insurance or taking him to doctor's visits, that Father failed to permit many of Mother's supervised visits, and Father's refusal to communicate to her about the child's education. Finally, Mother planned to present evidence the child made sexually explicit gestures at school.

But this evidence is similar to the evidence Mother presented at the December 2023 hearing. There, the trial court heard extensive evidence relating to M.O.S.'s transition to living with Father, versus constantly being "on the run" with Mother, his transition to attending public school which had led to academic challenges and regular absences, the child's living and sleeping

arrangements, the poor communication between the parents, her own admission that she had previously refused to follow court orders, and the parents' repeated violations of the loving and caring order. *See id.* In addition, the trial court heard extensive evidence of parental alienation by Mother, her refusal to permit Father's visitation, her refusal to turn over custody of M.O.S., and her discredited claims that Father was sexually abusing M.O.S.—discredited, in large part, based on the child's own statements supporting Father and his admission that previous statements had been to appease Mother. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

Although a refusal to allow evidence of the ten-month period of time can be significant, on this record and mindful that the trial court had the opportunity to determine the credibility of the parents and the weight to be given the same kind of evidence and similar allegations in the prior trial, we cannot conclude the trial court's best interest findings would have necessarily turned on the purported evidence to be offered by Mother at the October 2024 hearing. We therefore cannot conclude the trial court's error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1.

## CONCLUSION

Accordingly, the trial court's October 14, 2024 "order in suit to modify parent-child relationship" is affirmed.

Lori Massey Brissette, Justice